UNITED STATES of America

v.

**Robert GUERRERIO, Sr., Rosalie Guerrerio, Robert Guerrerio, Jr., John Guerrerio, and Edward Lustig, Defendants.**

**No. 86 Cr. 1061 (DNE).**

United States District Court,
S.D. New York.

Oct. 13, 1987.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., William B. Pollard III, Asst. U.S. Atty., of counsel, for the U.S.

Stroock, Stroock & Lavan, New York City, Thomas Puccio, of counsel, for defendant Robert Guerrerio, Sr.; Joel Cohen, of counsel, for defendant Rosalie Guerrerio.[1]

1. On March 11, 1987, and April 29, 1987, this court conducted hearings on the propriety of a single law firm, Stroock, Stroock & Lavan, representing two co-defendants. Joel Cohen and Thomas Puccio, then both partners in the Stroock firm, sought to continue their respective representation of Rosalie Guerrerio and Robert Guerrerio, Sr. The court concluded that the defendants' choice of counsel had been made knowingly and intelligently, and permitted the multiple representation. *See United States v. Iorizzo,* 786 F.2d 52 (2d Cir.1986); *United States v. Curcio,* 680 F.2d 881 (2d Cir.1982). Since the commencement of this action, however, Thomas Puccio has left Stroock, Stroock & Lavan to join the firm of Milbank, Tweed, Hadley & McCoy. Mr. Puccio still represents Robert Guerrerio, Sr.

Schlam Stone & Dolan, New York City, Harvey M. Stone, of counsel, for defendant Robert Guerrerio, Jr.

Gerald J. McMahon, New York City, for defendant John Guerrerio.

Freeman, Nooter & Ginsberg, New York City, Louis M. Freeman, of counsel, for defendant Edward Lustig.

## OPINION AND ORDER

EDELSTEIN, District Judge.

The defendants, Robert Guerrerio Sr., Rosalie Guerrerio, John Guerrerio, Robert Guerrerio Jr., and Edward Lustig, are charged in a fifteen count indictment. Count one charges the five defendants with a conspiracy to defraud the Internal Revenue Service, in violation of 18 U.S.C. Section 371. Counts two and three charge John and Robert Jr. with signing false tax returns for Rey Caulking Co., Inc. ("Rey Caulking") in 1980 and 1981, in violation of 26 U.S.C. Section 7206(2). Counts four and five charge Robert Sr. with violating 26 U.S.C. Section 7206(2) by aiding and abetting the preparation of those false returns. Counts six through ten charge Robert Sr. and Rosalie with signing false personal income tax returns from 1980 through 1984, thereby violating 26 U.S.C. Section 7206(1). Counts eleven and twelve charge Robert Sr. with violations of 18 U.S.C. Section 1341, for mail fraud in connection with a scheme to fraudulently obtain disability payments from the Social Security Administration and Allstate Insurance Company. Counts thirteen and fourteen respectively charge Robert Sr. with obstruction of a proceeding before the Social Security Administration, in violation of 18 U.S.C. Section 1505 and obstruction of justice in the United States District Court for the Southern District of New York, in violation of 18 U.S.C. Section 1503. Count fifteen charges Edward Lustig with obstruction of justice in violation of 18 U.S.C. Section 1503 for ordering a witness not to produce business records for a grand jury.

The defendants have made five motions requesting the court:

1. to compel the government to produce state grand jury material in the possession of the Bronx County District Attorney's Office;
2. to sever the charges against Robert Guerrerio Jr. and Edward Lustig;
3. to order a bill of particulars;
4. to strike from the indictment references to bribes and fraud;
5. to supress statements made by John Guerrerio.

The court defers ruling on the motion to suppress the statements of John Guerrerio until after an evidentiary hearing has been conducted. The remaining four motions are denied.

## BACKGROUND

This case centers on the activities of the Guerrerio family and the Rey Caulking Company, a small masonry firm in the Bronx. Robert Guerrerio Sr. is the co-founder of that firm, which he owned until 1977 when he allegedly suffered a disabling injury that rendered his arms useless. As a result of this injury, Robert Sr. applied for and eventually received disability income payments after appealing a denial of benefits to the United States District Court for the Southern District of New York. In 1977, Robert Sr. signed over control of Rey Caulking to his brother John.

Between 1979 and 1981, Rey Caulking received substantial payments under a contract for masonry services with the Riverbay Corporation ("Co-op City"), a cooperative housing complex in the Bronx, New York. Throughout this period, during which he was receiving disability payments, Robert Sr. allegedly managed this project, as well as others, for Rey Caulking. John and Robert Sr. diverted some of the payments under this contract before they were ever recorded in Rey Caulking's books. Moreover, all of the defendants further diverted corporate funds from Rey Caulking by means of payments to two fictitious payees, Empire Caulking Company ("Empire") and Ajax Caulking Company ("Ajax"), that were characterized on Rey Caulking's books as business expenses.

Consequently, Rey Caulking's tax returns for 1980 and 1981, which John and Robert Jr. signed and Robert Sr. allegedly assisted in preparing, falsely underreported the corporation's income by not reporting the diverted funds. Robert Sr. and Rosalie also failed to report the income generated by the diversions on their personal income tax returns. Finally, Edward Lustig attempted to thwart the investigation of this alleged conspiracy by ordering Dominic DiFebo not to produce Ajax business records for a federal grand jury.

## I. THE DISCOVERY MOTIONS

Defendants have moved pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) for discovery of material "available to the government through a joint federal-state investigation with the Bronx County District Attorney's Office." Defendant's Notice of Motion at 1. In particular, defendants seek grand jury materials from the Bronx County investigation.

Rule 16 of the Federal Rules of Criminal Procedure provides for the discovery of documents and tangible objects which are "within the possession, custody or control of the government." Fed.R.Crim.P. 16(a)(1)(C). Accordingly, this court must inquire whether the Bronx materials are within the possession, custody or control of the United States Attorney's Office for the Southern District of New York ("U.S. Attorney"). In answering this question, a review of the relationship between the offices of the U.S. Attorney and the Bronx District Attorney is appropriate.

In March 1983, the New York State Investigation Commission referred a report on corruption at Co-op City to the U.S. Attorney and the Bronx District Attorney. Thereafter, both offices began separate and independent investigations. During December 1983, however, the two offices reached an agreement that it would be most efficient for the U.S. Attorney to prosecute the matter. Accordingly, while the Bronx investigation ceased, the federal investigation continued. *See* affidavit of William B. Pollard III, July 16, 1987.

The federal investigation was originally conducted by Assistant United States Attorney Mary Lee Warren and Special Assistant United States Attorney Philip Foglia ("Foglia"). Although Foglia is also a Bronx County Assistant District Attorney, he had no knowledge of the Bronx investigation. This fact contributed to the U.S. Attorney's decision to recruit Foglia to work on the federal investigation. Foglia was sworn in as a Special Assistant on June 1, 1983. In December 1983, the U.S. Attorney assumed responsibility for the entire investigation and Assistant United States Attorney William B. Pollard III was designated principal Assistant. *See id.;* affidavit of Philip Foglia, May 4, 1987.

Pursuant to New York State court order, in February 1984, the Bronx District Attorney's Office transferred to the U.S. Attorney various third party documents obtained by subpoena during the state investigation. All of these documents were made available to the defendants in the instant case. With one exception now under seal,[2] no Bronx grand jury transcripts have been seen by federal prosecutors. Similarly, Foglia and A.U.S.A Pollard have not obtained any information derived from Bronx grand jury witnesses nor have they seen the files of Paul Battiste, the Bronx District Attorney who conducted the state investigation. The federal investigation leading to the filing of the instant indictment was based on material from the New York State Investigation Commission, third party documents obtained from the Bronx District Attorney's Office, and the work of the

---

**2.** On April 25, 1987, Assistant United States Attorney Pollard was reviewing materials obtained from the New York State Investigation Commission. Therein, he found a transcript from proceedings before the Bronx grand jury. As there had been no state court order permitting such a disclosure to the U.S. Attorney, A.U.S.A. Pollard, without reading the transcript, arranged to have the transcript sealed. *See* affidavit of William B. Pollard III at 10, n. 1., July 16, 1987.

federal grand jury. *See* affidavit of William B. Pollard III, July 16, 1987; affidavit of Philip Foglia, May 4, 1987.

■ Defendants contend that the relationship between the U.S. Attorney and the Bronx District Attorney's office imposes a duty upon the federal government to obtain and make available to defendants the Bronx grand jury material. The existence of a close relationship between two prosecutor's offices is relevant to considerations of discovery responsibilities.[3] The relationship between the U.S. Attorney and the Bronx District Attorney's Office in regard to the investigation of corruption at Co-op City was previously addressed in the Southern District of New York in the case of *United States v. Farrell*, 86 Cr. 781 (JMW). In that case, the defendants moved for an order requiring the government to produce the same grand jury materials sought in the instant motion. Finding that there had been no joint investigation

and that the U.S. Attorney had no control over the Bronx material, Judge Walker, without conducting an evidentiary hearing, denied the defendant's application. *See United States v. Farrell*, 86 Cr. 781 (JMW) Transcript of May 20, 1987 at 1–9. Similarly, this court finds that in the face of the affidavits submitted by the government, the defendants' claim that the government, through a joint investigation with the Bronx District Attorney, has control of the material sought is insufficient to prompt an evidentiary hearing.[4] Furthermore, as this court finds that there was no joint investigation, and that the government has no possession, custody, or control of the Bronx material, the defendants' motion pursuant to Fed.R.Crim.P. 16 is denied.

■ Similarly, this court declines to order the production of the requested materials pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[5] *Brady* does not require the

3. In support of the proposition that the government possesses and must produce the Bronx materials, the defendants cite *United States v. Paternina–Vergara*, 749 F.2d 993 (2d Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). In that case, the Second Circuit found that the existence of a joint investigation between the U.S. Drug Enforcement Agency and the Royal Canadian Mounted Police required the U.S. government to make good faith efforts to obtain Jencks Act statements possessed by the Canadians. Like Fed.R. Crim.P. 16, the Jencks Act applies to material in the possession of the United States. The Second Circuit found that even absent actual possession of the material sought, the close relationship between the two prosecutors' offices did place an added discovery obligation on the U.S. government. The *Paternina–Vergara* holding, however, is readily distinguishable from the case at bar. In *Paternina–Vergara*, there was extensive cooperation between U.S. and Canadian prosecutors. Further, the A.U.S.A. had reviewed, copied or summarized every document in the R.C.M.P.'s investigative file. In the instant case, however, the affidavits submitted by the government establish that there was no joint investigation and that the U.S. Attorney has no possession, custody or control of the material sought by the defendants. Unlike *Paternina–Vergara*, there was no close relationship requiring the government to seek documents possessed by another prosecutor's office. In the instant case, as there was no joint investigation, the government has no duty to seek the Bronx materials. *Cf. id.* at 997 (documents of local

police not subject to Jencks Act absent a joint investigation).

4. The defendants base their claim on a government press release dated December 12, 1986. The release states that a "joint investigation is being conducted by the United States Attorney's Office, the District Attorney's Office of Bronx County, The Internal Revenue Service Criminal Investigation Division, Brooklyn and Manhattan Offices, the U.S. Department of Labor Inspector General's Office, the U.S. Department of Health and Human Services Inspector General's Office, and the Immigration and Naturalization Service Investigation Branch." Affidavit of Joel Cohen, Exhibit F, May 5, 1987. The government has now contested the press statement with the affidavits of two prosecutors with personal knowledge of the history of this case. The defendants' claim is not supported by affidavit of any person with personal knowledge of the nature of the relationship between the U.S. Attorney's and the Bronx District Attorney's office. Accordingly, this court denies defendants' request for a evidentiary hearing on the nature of that relationship. *Cf. United States v. Gillette*, 383 F.2d 843 (2d Cir.1967); *United States v. Martinez*, 634 F.Supp. 1144, 1147 (S.D.N.Y.1986).

5. The defendants have identified the testimony of Dominick Sabitini, a witness before the federal grand jury, as *Brady* material. Affidavit of Joel Cohen at 2–3, May 5, 1987. The government, acknowledging its *Brady* responsibilities, has advised the defendants of the nature of that testimony.

government to search for exculpatory material not within its possession or control.[6] *See Pina v. Henderson,* 752 F.2d 47, 49–50 (2d Cir.1985); *United States v. Walker,* 559 F.2d 365, 373 (5th Cir.1977). Furthermore, even if the Bronx materials were indeed exculpatory and indeed within the control of the government, it does not necessarily follow that such material would fall within the ambit of *Brady. Brady* requires the disclosure of exculpatory evidence which, if suppressed, would deprive the defendant of a fair trial. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Under the *Brady* rule, however, the government has not "suppressed" evidence if the defendant "either knew ... or should have known ... of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *see Williams v. United States,* 503 F.2d 995, 998 (2d Cir. 1974). As the Second Circuit stated in *United States v. LeRoy,* 687 F.2d at 619, "the rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."

■ In the instant case, the defendants are well aware of the existence of the Bronx grand jury materials. If they seek to obtain such material, they may apply for an order of the Bronx County Supreme Court allowing them access to the material in question.[7] *See In re District Attorney,* 58 N.Y.2d 436, 442–43, 448 N.E.2d 440, 443–44, 461 N.Y.S.2d 773, 776 (1983). The U.S. Attorney does not possess or control the documents sought. The documents played no role in the federal prosecution. Furthermore, like the defendants, the government would not be able to acquire the materials sought without a court order. Under the facts of this case, the court sees nothing in *Brady* that places the burden of acquiring the grand jury materials on the government. The defendants are aware of the material sought and may obtain it as readily as the government. Further, to place this burden on the government would needlessly and unfairly prejudice their case. *See* supra note 6. Accordingly, the defendants' motion pursuant to *Brady* is denied.

**6.** In *United States v. Shakur,* 543 F.Supp. 1059 (S.D.N.Y.1982) (memorandum and order), the district court required the federal government to search for *Brady* material possessed by the Rockland County District Attorney. The court found that the government's claim that it should not be required to obtain material not in its actual possession was "hypertechnical and unrealistic." *Id.* at 1060. In so ruling, the court stated the "United States Attorney does not dispute that there has been and still is cooperative activity between him and the District Attorney of Rockland County with respect to the alleged crime charged in this indictment. Consequently, there should be no difficulty in obtaining such *Brady* material in the possession of the District Attorney of Rockland County of which the United States Attorney himself does not have immediate physical possession." *Id.*

In the instant case, the distinction drawn between the state and federal investigation is far from "hypertechnical and unrealistic." Here, there was no joint investigation. Furthermore, unlike in *Shakur,* the federal government does not have ready access to the material sought. The U.S. Attorney could obtain the grand jury material only upon issuance of a court order following a showing of a compelling and particularized need. *In re District Attorney,* 58 N.Y.2d 436, 448 N.E.2d 440, 461 N.Y.S.2d 773 (1983).

Also arguing against having the government rather than the defendants seek the grand jury material is the danger of placing an onerous *Kastigar* burden on the government. In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that the government has the burden in a subsequent criminal prosecution to prove that the evidence to be used is derived from a legitimate source completely independent of compelled immunized testimony. If the federal government is prosecuting or investigating a person who testified under grant of immunity in the Bronx, *Kastigar* taint issues could be needlessly raised.

**7.** Section 190.25(4)(a) of the New York Criminal Procedure Law provides that grand jury proceedings are secret. Such material can be disclosed only upon court order issued on a showing of a compelling and particularized need. *In re District Attorney,* 58 N.Y.2d 436, 444, 448 N.E.2d 440, 444, 461 N.Y.S.2d 773, 777 (1983).

## II. MOTIONS TO SEVER

### A. Motions to sever the case against the defendants.

Defendant Lustig has moved to have the case against him severed from the prosecution of the Guerrerios. The Guerrerios, in turn, have moved to have their case severed from the prosecution of Lustig. All of the defendants contend that such a severance is appropriate due to the danger of prejudicial spillover. Similarly, Robert Guerrerio, Jr., also raising the issue of prejudicial spillover, has moved to have the case against him tried separately. For the reasons stated below, the motions are denied.

Rule 14 of the Federal Rules of Criminal Procedure provides that:

> [i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires.

The decision to sever a case is left to the discretion of the district court. *United States v. Abrams,* 539 F.Supp. 378, 381 (S.D.N.Y.1982). To prompt severance, however, the moving party must demonstrate that a joint trial would not merely decrease the likelihood of acquittal, but rather would in effect deny him a fair trial. *Id.; United States v. Aloi,* 449 F.Supp. 698, 739 (E.D.N.Y.1977); *see also United States v. Clemente,* 494 F.Supp. 1310, 1324–25 (S.D.N.Y.1980), *aff'd,* 640 F.2d 1069 (2d Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981) (severance to be granted only upon showing of substantial prejudice). As a general rule, persons jointly indicted should be jointly tried. Such a rule "conserves judicial resources, alleviates the burdens on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials." *United States v. Lyles,*

593 F.2d 182, 191 (2d Cir.)(quoting *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971)), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). Given these standards and under the facts of the instant case, the risks of prejudice to the various defendants are not so great as to prompt a severance of the prosecution.

Defendant Lustig is charged in count one of the indictment, the tax conspiracy count, with creating and using fictitious invoices to conceal income skimmed from Rey Caulking. In count one, Lustig is named in one overt act, giving false Ajax invoices to Dominic DeFebo in order to conceal money DeFebo laundered for Rey Caulking. Lustig is also named in count fifteen. Count fifteen charges the defendant obstructed justice by counseling DeFebo, then a witness before a federal grand jury, not to produce Ajax business records which Lustig had previously given him. This obstruction, however, was not listed as a goal of, or an overt act to the conspiracy charged in count one.

The Guerrerios argue that they should be severed from Lustig because the charges against Lustig are remote from the offenses charged against them. The Guerrerios further profess that a joint trial would be prejudicial and would confuse the jury in its efforts to determine the facts of the case. In support of their claim of jury confusion, the Guerrerios refer to the July 1, 1985 conversation between Lustig and DeFebo. DeFebo tape recorded that conversation which included DeFebo's characterizations of the events leading to the filing of the instant indictment. The Guerrerios claim that these characterizations, although largely refuted by Lustig at the time of the conversation, build up to a prejudicial momentum which would cloud the jury's perception of the facts. The Guerrerio defendants further argue that the tape would be admissible as evidence only against Lustig.[8] These factors,

---

8. The Guerrerio defendants contend that the tape is inadmissible hearsay against them because the statements "were not made during the

course and in furtherance of the conspiracy which ended in 1982." Defendant's Memo. at 17; *see* Fed.R.Evid. 801(d)(2)(E); *see also Grune-*

it is contended, require severance of the case.

■ The court, however, finds that no such severance is necessary. Even if the tape is ultimately found to be admissible only against Lustig, *see* supra note 8, that decision alone would not compel severance. *See United States v. Rucker*, 586 F.2d 899, 902 (2d Cir.1978). Purported differences in degree of guilt are not sufficient grounds for separate trials. *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975). Similarly, a properly joined defendant is not entitled to a separate trial merely because there would be testimony relating to other criminal activities of his co-defendants. *See United States v. Weisman*, 624 F.2d 1118, 1129–30 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980).

■ At the close of trial in this case, the court will instruct the jury that the guilt or non-guilt of each defendant is to be determined individually. Further, instructions on the limited use of evidence, if appropriate, will be issued. Accordingly, the court is confident that the jury will be able to "'compartmentalize' the evidence presented to it, and distinguish among the various defendants in [this] multi-defendant suit." *United States v. Abrams*, 539 F.Supp. 378, 381 (S.D.N.Y.1982). Therefore, the risks of prejudice are not so great as to justify granting the Guerrerio defendants' motion to sever.

■ Defendant Lustig has also moved to have the case against him severed from the case against the Guerrerios.[9] In moving for a severance, Lustig stresses his professed lesser degree of culpability and the fact that he is named in only two of the fifteen counts in the indictment. A lesser degree of involvement, however, does not in and of itself justify the severing of a prosecution. *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975). In the instant indictment, it is alleged that Lustig and his shell corporation Ajax aided Dominic DeFebo in laundering Rey Caulking money on behalf of Robert Guerrerio Sr. The indictment charges a single conspiracy and that Lustig participated in that conspiracy. Given the joint nature of the alleged conspiracy, it is entirely appropriate that the participants be jointly tried. *See United States v. Ebner*, 782 F.2d 1120, 1127 (2d Cir.1986). With appropriate instructions to the jury, there is no reason why Lustig should not be tried with his co-conspirators.

Citing the danger of prejudicial spillover, defendant Robert Guerrerio Jr. has also moved pursuant to Fed.R.Crim.P. 14 for a severance of the prosecution against him. Robert Guerrerio Jr. is named as a co-conspirator in count one and is charged in count three with the substantive offense of subscribing a false and fraudulent corporate tax return. Like Lustig, Robert Guerrerio Jr. contends that compared to the other defendants, especially Robert Guerrerio Sr., his role in the crimes charged is minor. Robert Guerrerio Jr. also cites the danger of prejudical spillover due to his familial relationship with some of the other defendants.

There is currently no suppression motion or motion in limine before this court. Accordingly, this court will rule on the admissibility of the tape when an appropriate motion is filed or when the tape is offered into evidence at trial. Regardless of the ultimate resolution of this issue, the dangers of prejudice presented by the tape are not so great as to prompt a severance.

---

wald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (absent direct evidence of agreement, acts of concealment in and of themselves are insufficient to sustain a conviction for conspiracy to conceal). Contending that the conspiracy existed up and to the date of the filing of the indictment, the government maintains that the tape is admissible against all defendants as the act or statement of a co-conspirator. *See* Fed.R.Evid. 801(d)(2)(E); *see also United States v. Colasurdo*, 453 F.2d 585 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972) (concealment phase is part of the conspiracy if concealment was the essence of the conspiracy).

9. Lustig has both joined in the Guerrerios' motion and filed a separate motion to sever in his own behalf. Similarly, Robert Guerrrio Jr. joins in the other motions to sever.

This court, however, finds that a severance is not warranted under the facts of this case. It is alleged that Robert Guerrerio Jr. was involved in the core criminal conduct concerning both corporate and personal tax fraud. *See* indictment, count 1(2); 1(3)(a); 1(3)(c); 1(3)(f); 1(13)(s). Robert Guerrerio Jr.'s alleged participation in the tax scheme is far from de minimis and best understood in the context of the acts of his co-conspirators. Consequently, this court finds it appropriate that Robert Guerrerio Jr. stand trial with his alleged co-conspirators. At the close of the trial, this court shall instruct the jury that the guilt or non-guilt of each defendant must be determined individually. Furthermore, limiting evidentiary instructions shall be made if appropriate. As the court is satisfied that the jurors will be able to keep the defendants and relevant testimony separate in their minds, the defendants' motions for severance are denied.

B. Motion to sever the counts of the indictment.

Defendant Lustig has asserted that the various counts of the indictment should be severed as being unrelated. Joinder of offenses is governed by by Rule 8 of the Federal Rules of Criminal Procedure. Rule 8 provides:

(a) *Joinder of offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of a similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) *Joinder of defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts

together or separately and all of the defendants need not be charged in each count.

Like Rule 14, Rule 8 is "designed to promote economy and efficiency and avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n. 6, 88 S.Ct. 1620, 1625 n. 6, 20 L.Ed.2d 476 (1968); *but see United States v. Werner*, 620 F.2d 922, (2d Cir. 1980)(Rule 8 joinder is a question of law, subject to full appellate review, Rule 14 severance is left to sound discretion of the district court). Although Lustig protests the joinder of the offenses in the instant indictment, the appropriateness of the joinder is to be determined by reference to Rule 8(b). *See United States v. Turbide*, 558 F.2d 1053, 1061 n. 7 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *United States v. Papadakis*, 510 F.2d 287, 299–300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). When a defendant in a multiple defendant case challenges joinder of offenses, the proper inquiry is whether the co-defendants participated in the "same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b); *United States v. Ostrer*, 460 F.Supp. 1388, 1390 (1978).

In the instant case, the requirements of Rule 8(b) are met. All of the defendants are named as co-conspirators in count one of the indictment, the tax conspiracy. The offenses charged in counts two through fourteen clearly refer back to count one's enumeration of overt acts or means by which the conspiracy was carried out. Regarding count fifteen, the charge that Lustig obstructed justice by counseling Dominic DeFebo to withhold evidence from the grand jury, however, the connection of that count to the remainder of the indictment is less obvious. Lustig's alleged obstruction is not listed as an overt act to the conspiracy or a means by which the conspiracy was carried out.[10] Further-

---

**10.** The indictment does charge, however, that the tax conspiracy continued up to the date of

the filing of the indictment, December 12, 1987. Lustig's alleged obstruction of justice took place

more, the alleged obstruction took place in July 1985, over two and one half years after the date of the last overt act listed in count one.

Nevertheless, this court finds that the joinder of count fifteen does meet the requirements of Rule 8(b). The obstruction of justice charged was calculated to conceal the tax conspiracy. Lustig's alleged instructions to DeFebo can only be understood in the context of the original conspiracy. *See United States v. Colasurdo*, 453 F.2d 585 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); *see also Pacelli v. United States*, 588 F.2d 360, 367 n. 20 (2d Cir.1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979); *United States v. Borelli*, 336 F.2d 376, 387 (2d Cir.1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) (conspiracy may supply nexus allowing joinder pursuant to Fed.R. Crim.P. 8). Thus, each of the counts of the indictment arises from a common scheme, the tax conspiracy. Accordingly, Lustig's motion to sever the counts of the indictment is denied.[11]

### III. MOTION FOR A BILL OF PARTICULARS

The defendants have moved for an order directing the government to file a bill of particulars. By letters dated February 25, 1987, and April 30, 1987, the defendants informally requested that the government supply a bill of particulars. The government, by letter dated March 9, 1987, declined to supply any particulars with the exception of a list of known conspirators before that date. Further, the government now contends that Lustig's alleged act was made in furtherance of the tax conspiracy. *See* Government's Memo at 15.

and the particular that the government was alleging that, under the facts of this case, disability payments are subject to taxation. Following the government's limited response, the defendants filed the instant motion.

 The purpose of a bill of particulars is to apprise defendants of the essential elements of the crimes with which they are charged. *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y.1977); *see United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir.1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974). Thus, ordering the filing of a bill of particulars is appropriate only when the indictment is cast so generally that it does not advise the defendants of the specific acts of which they are accused. *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y. 1977). The test is not whether the particulars sought would be *useful* to the defense. Rather, a more appropriate inquiry is whether the information in question is *necessary* to the defense. *See United States v. Leighton*, 265 F.Supp. 27, 35 (S.D.N.Y. 1967). In the instant case, the particulars sought are not necessary to the defense. The government has provided the defendants with "voluminous discovery."[12] Defendants' Memo. at 32 n. 15. Furthermore, the indictment itself is sufficiently detailed to allow the defendants to adequately prepare a defense, avoid prejudicial surprise at trial, and raise any possible defense of double jeopardy. *United States v. Remy*, 658 F.Supp. 661, 669 (S.D.N.Y.1987).

 Perhaps, the particulars sought would be useful to the defendants. A bill

---

**11.** As indicated by the earlier discussion of Lustig's motion for severance pursuant to Fed.R. Crim.P. 14, considerations of possible prejudice to the defendant do not justify severance of the indictment. At the close of trial in this case, the jury will be instructed that the guilt or non-guilt of each defendant for each count of the indictment must be decided individually. Under the facts of the instant case, this court does not doubt that the jury will be able to follow that instruction.

**12.** The defendants protest that the government has not offered any guidance in interpreting or characterizing the vast number of documents produced. There is, however, no requirement that the government allow the defendants a preview of the government's evidence or the theory of its case. *See United States v. Culoso*, 461 F.Supp. 128, 134 n. 9 (S.D.N.Y.1978), *aff'd mem.*, 607 F.2d 999 (2d Cir.1979). Discovery alone may not obviate the need for a bill of particulars in some cases. In the instant case, however, the indictment itself is sufficiently detailed so as to make a bill of particulars unnecessary.

of particulars, however, is not a discovery tool and is not intended to allow defendants a preview of the evidence or the theory of the government's case. *See United States v. Culoso*, 461 F.Supp. 128, 134 & n. 8 (S.D.N.Y.1978), *aff'd mem.*, 607 F.2d 999 (2d Cir.1979). Further, the government is not obliged to disclose the precise manner in which the crimes alleged in the indictment were committed. *See United States v. Andrews*, 381 F.2d 377, 377–78 (2d Cir. 1967) (per curiam), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968); *United States v. Remy*, 658 F.Supp. 661, 670 (S.D.N.Y.1987). Accordingly, defendants' motion for an order directing the government to file a bill of particulars is denied.

## IV. MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

The defendants have moved to strike from the indictment references that Robert Guerrerio Sr. paid "bribes" or "pay-offs" to Fernando Bragaglia, a New York State building inspector, and George DeMeo, a Co-op City employee.[13] Rather, defendants propose that the challenged terms be replaced by the word "payments." Similarly, defendant Robert Guerrerio Jr. has moved to delete from count one references to disability payment obtained through an allegedly false representation that Robert Guerrerio Sr. was unable to work.[14] In the alternative, the defendants move to have the court rule on this issue after trial, witholding the unedited indictment from the jury and forbidding any reading of the challenged terms during the government's opening statement.[15]

■ A motion to strike surplusage from an indictment will be granted only when it is clear that the challenged terms are: 1) irrelevant to the crime charged, and 2) inflammatory and prejudicial. *United States v. Louie*, 625 F.Supp. 1327, 1341 (S.D.N.Y.

1985). Given this exacting standard, such motions are rarely granted. *See United States v. DePalma*, 461 F.Supp. 778, 797 (S.D.N.Y.1978).

■ The defendants argue that the terms "bribes" and "pay-offs" are unduly prejudicial in that the payments in question were prompted by the extortionate acts of Bragaglia and DeMeo. As extortion is a defense to bribery, *United States v. McPartlin*, 595 F.2d 1321, 1338 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); N.Y. Penal Law section 200.05 (McKinney 1975), defendants contend that it is unfair to prejudge the payments as "bribes" or "pay-offs." The government has conceded that at least regarding the payments to Bragaglia, there were indeed elements of extortion involved. The government, however, maintains that the extortion must be viewed in the context of the larger scheme to defraud Co-op City. If the payments were not made, that scheme would have collapsed. The court finds that in light of the government's argument, the terms "bribes" and "pay-offs" are relevant to the conspiracy charged in count one. Accordingly, the motion to strike those terms is denied.

■ Regarding the reference in count one to Robert Guerrerio Sr.'s allegedly fraudulent claim of disability, Robert Guerrerio Jr. contends that the fraud was "designed simply to increase income, [and was] not necessarily part of a conspiracy to evade taxes." Memo. of Robert Guerrerio Jr. at 7. Consequently, this defendant argues that the reference to fraud should be stricken. The government, in response, contends that that the challenged term is not only relevant to the crime charged, but its presence is necessary to demonstrate the culpable nature of the act charged. The government must prove that the disability payments made to Robert Guerrerio

---

**13.** Indictment paragraphs 3(h) and (i) allege "cash pay-offs" to Bragaglia and DeMeo as a means by which the tax conspiracy was carried out. Paragraphs 13(b), (c), (f), (g), and (*o*), allege "cash bribes" to these individuals as overt acts in the tax conspiracy.

**14.** The alleged false representation is listed in count one as a means by which the tax conspiracy was carried out.

**15.** As this court has ruled on the motion to strike surplusage, defendants' motion in the alternative is denied.

Sr. and his family were obtained by fraud in order to include that money as taxable income. *See* I.R.C. section 61(a); *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (illegally obtained funds are included as gross income). Without such a showing, the payments would not be subject to income taxation. *See* I.R.C. section 104 (compensation for injuries or sickness not included as gross income). Thus, the allegation of fraudulent conduct is clearly relevant to the charge that the defendants conspired to violate the tax code. Accordingly, the motion to strike the reference to fraud is denied.

### CONCLUSION

The court defers ruling on the motion to suppress statements of John Guerrerio until after an evidentiary hearing has been conducted. The remaining four motions are denied.

SO ORDERED.