UNITED STATES of America,

v.

Terri HOLIHAN, Defendant.

No. 02–CR–74E(F).

United States District Court, W.D. New York.

Dec. 6, 2002.

Michael A. Battle, United States Attorney, Buffalo, NY (Gregory L. Brown, Assistant United States Attorney, of Counsel), for Government.

William Clauss, Federal Public Defender, Buffalo, NY (Kimberly A. Schecter, Assistant Federal Public Defender, of Counsel), for Defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This case was referred to the undersigned on June 13, 2002 by Honorable John T. Elfvin for all pretrial matters. The matter is presently before the court on Defendant's motion for discovery, filed September 6, 2002 (Docket No. 8).

### BACKGROUND and FACTS

Defendant Terri Holihan is charged in a Grand Jury indictment ("the Indictment") with eleven separate violations of 18 U.S.C. § 656, *i.e.*, embezzlement by a bank employee of more than $1,000. Specifically Defendant, who for fourteen years was employed as a bank teller with HSBC Bank ("HSBC" or "the Bank") and its predecessor, Marine Midland Bank, is accused of embezzling a total of $42,000 through fraudulent withdrawals from eleven separate Bank customers' accounts at the Bank's Eden, New York branch ("the Eden branch") where Defendant was most recently employed. The alleged withdrawals occurred over a three day period between July 28 and 30, 1999. According to the Government, the funds were embezzled through a series of on-line computer-

ized bank account transactions wherein the victims' bank accounts were debited for a certain sum of money and cash was paid out. The subject transactions were brought to the Bank's attention by the victims who questioned the withdrawals which subsequently appeared on their respective monthly bank account statements. The Eden branch's manager has been granted immunity from prosecution in return for her cooperation in the ensuing investigation which began in September 1989.

On September 6, 2002, Defendant filed a motion for discovery of evidence allegedly withheld by the Government or, alternatively, for suppression of such evidence. Attached to the notice of motion is the Affirmation of Assistant Federal Public Defender Kimberly A. Schecter ("Schecter Affirmation"). On September 20, 2002, the Government filed its Response to Defendant's Discovery Motion (Docket No. 9) ("Government's Response"). At oral argument conducted on the motion on October 3, 2002, the prosecuting attorney advised the court that the Government was not in possession of much of the information Defendant requested; rather, the Government surmised, such information, if it existed, would be in the possession of either the federal case agent or Bank investigator assigned to the case. Mr. Brown further advised that he would inquire of the case agent and Bank investigator as to such information, and, if it existed, would arrange for it to be supplied to Defendant. The court then directed Defendant to file additional factual detail in support of and providing greater specification as to Defendant's discovery requests. Accordingly, Defendant, on October 11, 2002, filed the

combined Supplemental Affirmation of Assistant Federal Public Defender Schecter and Memorandum of Law (Docket No. 10) ("Supplemental Schecter Affirmation").[1] By letter to the court filed November 22, 2002 (Docket No. 18) ("Schecter Letter"), Defendant further advised the court regarding the status of the discovery requests, stating that the Government had yet to respond to several of Defendant's requests or to confirm the existence of the requested information.

Based on the following, Defendant's motion for discovery is GRANTED. As the court has fully addressed the discovery motion, it need not address Defendant's alternative request for suppression of evidence not produced by the Government, and as such Defendant's alternate request is DISMISSED as moot without prejudice.

### DISCUSSION

Defendant seeks discovery pursuant to Fed.R.Crim.P. Rule 16(a)(1)(C) governing information the Government is required to disclose as material to the preparation of Defendant's defense, as well as pursuant to the *Brady* doctrine as exculpatory evidence. In the event the Government fails to disclose the requested information, Defendant alternatively requests an order pursuant to Fed.R.Crim.P. 16(d) precluding the Government's introduction of such evidence at trial. The Government maintains that to date it has, through voluntary discovery, fully complied with such requests and intends to continue to provide or make available for inspection such discovery as the Government becomes aware of additional information. Government's Response at 1. The Government further

---

**1.** Defendant subsequently subpoenaed HSBC Bank with regard to certain discovery requests not produced by the Government, but believed to be in the Bank's control or possession. The Bank moved to quash the sub-

poena by motion filed November 15, 2002 (Docket No. 13). As a hearing on the Bank's motion has been scheduled, the merits of the motion to quash are not addressed in this Decision and Order.

maintains that the supplementary documents Defendant requests is not within the possession of the Government and, if such documents exists, they are more likely to be in the case files of the federal case agent or Bank investigator investigating the case. *Id.* at 2. The Government, nonetheless, has represented that it would diligently inquire of the federal case agent and the Bank investigator as to the existence of such documents and records, and assuming the information is found to exist, will supply such to Defendant. *Id.* To date, however, the Government has not advised either Defendant or the court whether such inquiry was made, nor whether the requested information and documentation was found to be within the possession of the federal case agent or Bank investigator.[2]

 Defendant's outstanding discovery requests include: (1) history of Defendant's bank computer terminal "sign on" and "sign off" times for the three month period ending July 30, 1999; (2) any Suspicious Activity Reports concerning others employed at the HSBC Eden branch in July 1999; (3) the Bank's operating procedures regarding attendance record-keeping and trash disposal; (4) any Bank logs showing the daily tally from July 28 to 30, 1999, of on-line computer entries compared to the number of bank transactions; (5) information regarding the frequency with which the number of Bank account withdrawal slips do not match the number of on-line transactions at the HSBC Eden branch; (6) all investigative information as to other Bank employees suggesting any motive to embezzle money or the making of unusual purchases or payments after July 30, 1999; and (7) the FBI 302 reports containing information provided by Bank employees Kathleen Zugger and Laura Bosinski regarding the date and manner by which the HSBC Security Department was notified of the alleged embezzlement.[3] Supplemental Schecter Affirmation at 7; Schecter Letter at 1–2. Although Defendant presents her discovery requests pursuant to both Fed.R.Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a review of the record demonstrates that Rule 16 is the relevant basis for discovery, although some of the requested information is also subject to disclosure under *Brady.*[4]

---

2. The Government has not opposed providing any of the requested discovery on the basis that Defendant may use such discovery to suborn any government witness.

3. Under the mistaken belief that Kathleen Zugger and Laura Bosinski had testified before the Grand Jury, Defendant originally requested a transcript of such testimony. Schecter Affirmation, ¶ 7(e), p. 8. Defendant subsequently learned that neither Zugger nor Bosinski had testified before the Grand Jury but, rather, the information they provided was contained in FBI 320 reports and, accordingly, has withdrawn her request for such grand jury testimony and instead seeks the FBI 320 reports. Supplemental Schecter Affirmation at 7.

4. The basic rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, which is grounded in due

process, "is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or punishment". *In re United States (Coppa),* 267 F.3d 132, 139 (2d Cir. 2001). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *Coppa, supra,* (citing *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). The disclosure of such evidence protects a defendant's right to a fair trial "by ensuring the reliability of any criminal verdict against him." *Coppa, supra* (citing *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Although there is no absolute right to pretrial discovery of *Brady* material, *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), that some of the information Defen-

Fed.R.Crim.P. Rule 16 provides, in pertinent part, that

[u]pon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant.

Fed.R.Crim.P. Rule 16(a)(1)(C).

▆▆▆ Rule 16(a)(1)(C) authorizes discovery from the Government material to the defense, but excepts from discovery internal investigative documents "made by the attorney for the government or any other government agent investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2). Discovery is material if the information sought is relevant to the case and will lead to the discovery of admissible evidence. *See United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir.1993); *United States v. Tanner,* 279 F.Supp. 457, 469–70 (N.D.Ill.1967). The requested information also must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense. *United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir.1991); *United States v. Ross,* 511 F.2d 757, 762–63 (5th Cir.1975); *United States v. Feola,* 651 F.Supp. 1068 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.1989), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989).

Further, the prosecution alone is responsible for ensuring that Defendant is provided with information discoverable under Rule 16, including information that is in possession of other government agencies participating in the investigation. Although the Second Circuit has not analyzed the phrase "in possession, custody, or control of the government" in connection with Rule 16(a)(1)(C), other courts in this and other circuits "have construed the term 'government' in this rule [16(a)(1)(C) ] narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general." *United States v. Volpe,* 42 F.Supp.2d 204, 221 (E.D.N.Y. 1999) (citing cases and holding United States Attorney's office not required to disclose to defendant information involved in separate investigation within the United States Attorney's Office as two prosecution teams were not involved in joint investigation and, as such, prosecution did not have access to requested material). *See also United States v. Haldeman,* 559 F.2d 31, 73–74 (D.C.Cir.1976) (holding Rule 16 did not require production of information not in possession of Special Prosecutor, any investigative unit under his control, or any other agency allied with the prosecution); *United States v. Upton,* 856 F.Supp. 727, 749–50 (E.D.N.Y.1994) (holding government not required to produce material from agency outside United States Attorney's office where there was no "joint investigation" with such outside agency); *United States v. Poindexter,* 727 F.Supp. 1470, 1477 (D.D.C.1989) (requiring Rule 16 production of documents within hands of federal prosecutor, any investigative unit under prosecutor's control and other federal agencies "allied with the prosecu-

dant seeks may, as arguably exculpatory in nature, be subject to disclosure pursuant to *Brady* as well as discoverable under Fed.

R.Crim.P. 16(a)(1)(C) does not render such information exempt from pretrial discovery pursuant to Rule 16.

tion"); *United States v. Guerrerio,* 670 F.Supp. 1215, 1219–20 (S.D.N.Y.1987) (denying defendants' Rule 16 request for grand jury minutes which were the product of district attorney's office investigation in absence of joint investigation by United States Attorney and District Attorney and played no role in federal prosecution).

█ In the instant case, the Government has failed to advise the court whether it has "diligently inquired" as to whether the information Defendant seeks is within the case files of either the federal case agent and the Bank investigator such that the Government could arrange for the information to be provided to Defendant. This unexplained lapse is significant because, as discussed below, the court finds each of Defendant's outstanding discovery requests seeks material evidence given her defense theory that Defendant has been framed by some other Bank employee who embezzled the money, and that several other Bank employees may have been motivated by financial problems to commit such crimes. Schecter Affirmation, ¶ 7 at 4–5. Significantly, the Government does not deny that it is involved in a joint investigation between the FBI case agent and Bank investigator, and that the requested information is, for the purposes of the instant criminal prosecution with the Government's control. Moreover, the Government attorney represented both in its response and at oral argument that if upon inquiry it was determined that the requested information was in the possession of the Bank's investigators, he would provide it to the Defendant. Government's Response at 2. Such representation strongly implies that, to the extent it exists, the requested information is subject to the Government's control. The requested information possessed by the case agent or Bank examiner should be therefore consid-

ered as in the "possession, custody, or control of the government." Fed. R.Crim.P. 16(a)(1)(C). Accordingly, to the extent found material, if the requested information is in the possession of either federal agents involved in the instant case or the Bank, it is subject to disclosure pursuant to Fed.R.Crim.P. 16(a)(1)(C).

**1. Defendant's Bank Computer Terminal "Sign On" and "Sign Off" History**

█ Defendant anticipates that the Government will attempt to prove its case against her by demonstrating that Defendant was signed onto her Bank computer terminal when each of the eleven electronic on-line transactions charged in the Indictment was made via her computer terminal. Schecter Affirmation, ¶ 7(b). According to Defendant, she habitually failed to comply with the Bank's procedure requiring that each employee sign off from the assigned computer terminal prior to leaving the work area. *Id.* As such, Defendant maintains that evidence of her failure to regularly comply with the sign-off requirement would demonstrate that the opportunity existed for some other Bank employee to make the eleven illegal transactions from Defendant's computer terminal. *Id.* Defendant further maintains that as the Bank has been able to retrieve information concerning "sign on" and "sign off" times to create charts demonstrating that she was signed on when all eleven transactions were made, the Bank should also be able to retrieve information as to the other times she signed on and off her computer terminal, including for the three month period, ending July 30, 1999. *Id.*

The court finds such information is material to the preparation of Defendant's defense and, as such, is subject to discovery under Rule 16.

### 2. Suspicious Activity Reports Concerning Other Bank Employees

■ Defendant seeks all Suspicious Activity Reports ("SARs") filed against any other person employed at the Bank's Eden Branch in July 1999. Schecter Affirmation, ¶ 7(d) at 7–8. According to Defendant, the Government has indicated it intends to use an SAR filed against her as impeachment material at trial. *Id.* Defendant maintains that SARs have been filed against other Eden Branch Bank employees and that such SARs should also be available for use as impeachment material regarding Government witnesses. *Id.*

The court finds that the use of the SARs to impeach government witnesses will have a significant effect on the defense and, as thus, are material to the defense. *Maniktala, supra,* at 28. The SARs are, therefore, discoverable under Rule 16(a)(1)(C).

### 3. HSBC's Operating Procedures

■ In particular, Defendant seeks the Bank's operating procedures regarding attendance record-keeping and trash disposal. Supplemental Schecter Affirmation at 3–4. According to Defendant, as the Government has granted immunity from prosecution for the charged crimes to Carol Banazak, the Bank's Eden Branch manager, and as Banazak is expected to testify that she was absent from work on one of the three days on which the subject transactions were made, information regarding the Bank's attendance record keeping procedures is material effecting cross-examination of Banazak as to her credibility about her own attendance. *Id.* at 3.

As Banazak has been granted immunity from prosecution on the charged crimes, any information calling into doubt Banazak's assertion that she did not work on one of the three days on which the eleven embezzlement transactions were made would be favorable to Defendant's defense theory. As such, this information is discoverable as material to the defense pursuant to Rule 16(a)(1)(C).

### 4. July 28 to 30, 1999 Bank Log of On-line Computer Entries

■ Defendant requests disclosure of a log comparing the daily tally at the Eden Branch of the total number of banking transactions with the number of on-line computer entries for July 28 to 30, 1999. Schecter Supplemental Affirmation at 4–5. According to Defendant, the Government intends to offer at trial testimony regarding a document entitled "On-line Documents Batch and Bag Review Log" and referred to as "Document 14," demonstrating that at the end of each of the three days on which the alleged crimes occurred all the paperwork was "in order," allowing Defendant to avoid detection of the alleged embezzlement. *Id.* at 4. Defendant further maintains that according to an excerpt from Document 14, it was prepared from information contained in the requested log, including an "itemized batch listing," a "cash out ticket," and "analysis control document," and a "branch-on-line document." *Id.* at 4–5.[5] As such, Defendant asserts that review of this information is necessary to challenge the reliability of Document 14.

Insofar as this information reasonably could call into question the reliability of Document 14, and thus reduce its potential probative value for the jury, it is discoverable under Rule 16(a)(1)(C) as material to the defense.

### 5. Information as to Frequency of Mismatched Withdrawal Slips and On-line Transactions

■ Defendant states that the Government may present evidence that no with-

---

5. The papers do not further explain the nature of these documents.

drawal slips corresponding to the victim customers' complaints of the alleged unauthorized deductions from their accounts have been located. Schecter Supplemental Affirmation at 5. According to Defendant, such information is relevant as a chart entitled "stolen-forged-larceny checks" produced by the Government during discovery shows that unaccounted for "losses" from certain accounts also occurred on July 26, 1999, although the Indictment does not charge Defendant with any criminal activity relative to that date. *Id.* As such, Defendant maintains that if no corresponding withdrawal slips exist for the July 26, 1999 losses, yet it is determined such losses were in fact authorized by Bank customers, the mere lack of withdrawal slips corresponding to the eleven transactions that are the subject of the Indictment would be subject to challenge, *i.e.*, the victim customers did make the withdrawals at issue, but no withdrawal slips were generated. *Id.* Alternatively, the existence of withdrawal slips for the July 26, 1999 losses would demonstrate an inconsistency as to the Government's theory as to Defendant's alleged *modus operandi.* *Id.* Further, such defects in the Bank's record keeping, if found, could conceivably persuade the jury that the alleged losses were in fact withdrawn by the account holders but that, through failures in the Bank's record keeping system, no records of the transactions were generated.

Accordingly, as the requested information is material to the defense, it is discoverable pursuant to Rule 16(a)(1)(C).

## 6. Investigation Evidence as to Other Bank Employees' Financial Motives

■ Defendants seeks any information garnered by the FBI in investigating other Bank employees who had financial motive to commit the charged crimes, including information regarding unusual payments or purchases following the alleged embezzlement. Supplemental Schecter Affirmation at 6. Defendant maintains that the FBI examined only her own finances in connection with the criminal investigation, although other Bank employees had financial difficulties. *Id.* Further, no evidence of any such payments or purchased by Defendant was found. *Id.*

This information is relevant to Defendant's preparation of her defense that the alleged embezzlement was committed by another Bank employee and, thus, is discoverable under Rule 16(a)(1)(C). Such information could also call into doubt any motive on the part of Defendant to commit the alleged acts of embezzlement, particularly in light of the fact that no evidence was found as to large payments or purchases by Defendant. Accordingly, as such information could reasonably have a significant effect on the success of Defendant's defense it is material and therefore is also discoverable pursuant to Rule 16(a)(1)(C).

## 7. FBI 302 Reports

■ Defendant seeks the FBI 302 reports containing information provided by Bank employees Kathleen Zugger and Laura Bosinski regarding the date and manner by which the HSBC Security Department was notified of the alleged embezzlement. Supplemental Schecter Affirmation at 7. Defendant maintains such information is relevant as it was first provided to HSBC's security department two weeks after the last charged embezzlement act and the SAR filed in connection with the notification indicated only that the manager was the source of such information. *Id.*

The FBI 302 reports are internal investigative documents "made by the attorney for the government or any other government agent investigating or prosecuting

the case" and, as such, are excepted from Rule 16 discovery. Fed.R.Crim.P. 16(a)(2). Such information may also qualify as **Jencks Act** material pursuant to 18 U.S.C. § 3500, and for which the court is without authority to order pretrial disclosure. *United States v. Scotti*, 47 F.3d 1237, 1249–50 (2d Cir.1995).

Nevertheless, this information is material to the preparation of the defense given that it may demonstrate how Zugger and Bosinski became aware of the alleged embezzlement. The requested information may also aid Defendant with her defense that she was set up by co-employees with access to her terminal should it be determined that Zugger and Bosinski had any financial motive to commit the charged crimes. Moreover, the specific information Defendant requests is limited to certain facts which can be distilled from the FBI 302 reports and provided in some other form.

Accordingly, although this information is discoverable under Rule 16(a)(1)(C) as material to the defense, under the *Jencks Act*, the requested FBI 302 Reports are not discoverable at this time. However, as the specific facts Defendant seeks, *i.e.*, the dates and manner by which Bank employees Zugger and Bosinski notified the Bank Security Department of the suspected losses are discoverable, such facts should be transposed from the FBI 302 Reports and provided to Defendant in writing without providing copies of the 302 Reports themselves. Accordingly, as to this request, Defendant's motion is GRANTED in part, and DENIED, in part.

However, as noted, to date the Government has failed to advise Defendant whether any of the requested information is within the possession, custody or control of the government agencies participating in the underlying investigation or the Bank. As discussed, if such information does exist, the Government is obliged to provide the requested information to Defendant. Discussion, *supra*, at 6–7.

Accordingly, the Government is directed to inquire of the other government agencies and the Bank assisting in the investigation of the charged offenses in the instant matter as to the existence of the requested information as found by the court to be material to the defense and, if such information does exist, to arrange for the information to be provided to Defendant *not later than 30 days* after service of this Order. As to any of the requested information which the Government, upon diligent inquiry of the relevant agency or the Bank, determines does not exist, the Government is directed to advise Defendant by affidavit filed with the court of such fact *by the same date.*

### CONCLUSION

Based on the foregoing, Defendant's motion for discovery pursuant to Fed. R.Crim.P. 16 is GRANTED in part, and DENIED, in part. Defendant's alternative request for suppression of evidence is DISMISSED as moot, and without prejudice.

SO ORDERED.