**UNITED STATES of America, Plaintiff,**

v.

**Edward UPTON, Thomas Lewis, Joseph Moser, Edward Hay, Charles Catarelli, Stephen Jones, Roy Hardy, Robert Knox, Hollis Huffman, Charles Bray, K. Ray Stooksbury, Robert Zuegel and Jacques Jean, Defendants.**

No. CR–90–0629.

United States District Court, E.D. New York.

June 29, 1994.

Charles W. Gerber, Jonathan D. Polkes, Charles D. Hammerman, Asst. U.S. Attys., for plaintiff.

Stephen E. Kaufman, New York City, for Edward Upton.

Philip Katowitz, New York City, for Thomas Lewis.

Louis M. Freeman, Freeman, Nooter & Ginsberg, New York City, for Joseph Moser.

Richard Ware Levitt, New York City, for Charles Catarelli.

John D. Patten, New York City, for Stephen Jones.

Jerry D. Bernstein, New York City, for Roy Hardy.

Bernard H. Udell, Brooklyn, for Robert Knox.

Jay Gregory Horlick, Brooklyn, for Jacques Jean.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The twenty-nine count Superseding Indictment in this case arises out of charges of falsification of airplane maintenance records for Eastern Air Lines, Inc. ("Eastern"), at John F. Kennedy International Airport ("JFK") in New York City, and Hartsfield Airport ("Hartsfield") in Atlanta.[1] Defendants are also charged with obstructing the administration of the law by, among other things, testifying falsely before the Federal Aviation Administration of the Department of Transportation ("FAA"), regarding their knowledge of and participation in a conspiracy to falsify Eastern's maintenance records.

For the purposes of this memorandum and order, the defendants will be referred to as follows. The defendants who worked at JFK, Thomas Lewis ("Lewis"), Joseph Moser ("Moser"), Charles Catarelli ("Catarelli"), Roy Hardy ("Hardy"), Robert Knox ("Knox"), Jacques Jean ("Jean") and Stephen Jones ("Jones"), will be referred to as the "JFK Defendants." The defendants who worked at Hartsfield in Atlanta, Edward Hay ("Hay"), Charles Bray ("Bray"), Hollis Huffman ("Huffman"), K. Ray Stooksbury ("Stooksbury"), and Robert Zuegel ("Zuegel"), will be referred to as the "Atlanta Defendants." Upton worked at Eastern's headquarters in Miami, Florida.

## DISCUSSION

### I. Motion to Dismiss or Sever

#### A. Impermissible Joinder

 The Atlanta defendants, Knox, and Upton claim that they were improperly joined in the indictment and that their trials should be severed, pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure,[2] which permits joinder of multiple defendants if they are alleged to have participated in a common scheme or plan. United States v. Bernstein, 533 F.2d 775, 789 (2d Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). It is well settled that the good-faith inclusion of a conspiracy count establishes the requisite common scheme or plan and is sufficient to support joinder of defendants under Rule 8(b). United States v. Uccio, 917 F.2d 80, 87 (2d Cir.1990); United States v. Aiken, 373 F.2d 294, 299–300 (2d Cir.), cert. denied, 389 U.S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967). Joinder of a conspiracy count with substantive counts arising from the conspiracy is proper because the conspiracy charge provides a common link and demonstrates the extension of a common plan. Bernstein, 533 F.2d at 789; United States v. Smith, 789 F.2d 196, 206 (3rd Cir.) ("As long as the government has charged conspiracy in good faith, an allegation of conspiracy is a sufficient reason for trying the conspiracy and all substantive offenses together"), cert. denied, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

An exception to this general rule is that where counts unrelated to the general conspiracy are alleged, the government has the burden of showing that they are a part of the

---

1. The original indictment included Eastern and Elia Dragone ("Dragone"), a foreman stationed at JFK, as defendants. Eastern pleaded guilty to several of the counts of the original indictment on March 20, 1991; Dragone pleaded guilty on July 30, 1990. The Superseding Indictment was returned by a grand jury on or about March 7, 1991; as well as dropping Eastern and Dragone as defendants, the Superseding Indictment, among other things, dropped 33 counts, added five defendants and four counts.

2. This rule provides that,

 Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

 Fed.R.Crim.P. 8(b).

conspiracy. *See United States v. Carrozza,* 728 F.Supp. 266, 270 (S.D.N.Y.1990), *aff'd,* 956 F.2d 1160 (2d Cir.1992) (table). In this case all the counts contained in the Superseding Indictment are clearly related to the conspiracy count. This is so, even with regard to the obstruction of justice count, which alleges that certain defendants. testified falsely before the FAA. The indictment alleges that the false testimony was a critical component in the over-arching scheme to defraud the federal government and was a part of the original conspiracy.[3] Accordingly, joinder of all the counts complies with Rule 8(b). *See United States v. Cunningham,* 723 F.2d 217, 229 (2d Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).

Defendants heavily rely on *United States v. Rosenblatt,* 554 F.2d 36 (2d Cir.1977), in support of their Rule 8(b) motions. In *Rosenblatt,* an alleged co-conspirator, Brooks, made false entries in the accounts payable records at the Manhattan Postal Service headquarters and obtained checks totalling over $180,000, payable to persons having no claim to payment from the Postal Service. Brooks was indicted for conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and testified against the defendant, Rosenblatt. Rosenblatt, a college dean, agreed to "launder" the checks through the college's bank account and keep a certain percentage for his services. He was indicted along with Brooks for a violation of 18 U.S.C. § 371. The Second Circuit reversed the jury verdict of guilty because there was no agreement, either pleaded or proved, as to which fraud was to be executed. The court wrote:

> Our difficulty with Rosenblatt's conviction arises from the lack of any agreement between him and Brooks concerning the type of fraud in which they were engaged. It is clear that Brooks was defrauding the United States by obtaining payment for government checks which he had caused to be printed without authorization. The

government stipulated, however, that Rosenblatt did not know the truth about Brooks' activities.... In other words, both men agreed to defraud the United States, but neither agreed on the type of fraud. On this appeal, *Rosenblatt argues that under 18 U.S.C. § 371 a conspiracy must be grounded upon agreement on some common scheme or plan. He maintains that proof of an agreement to defraud, without further qualification as to the nature of the fraud, is insufficient to support a conviction under § 371. We agree and reverse the conviction.*

*Id.* at 38 (emphasis added).

Defendants therefore contend that *Rosenblatt* stands for the proposition that unless the indictment establishes an agreement among the purported conspirators, the indictment does not satisfy Rule 8(b) and should be dismissed in its entirety. The focus of the court's attention, however, was on the fact that the government did not, and given its stipulation could not, prove an agreement between Brooks and Rosenblatt as to the essential nature of the fraud allegedly perpetrated against the United States in violation of 18 U.S.C. § 371: "Proof of the essential nature of the plan is required because 'the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant.' " *Id.* (quoting *United States v. Borelli,* 336 F.2d 376, 384 (2d Cir.1964), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965)). The court did not discuss Rule 8(b), joinder or severance and consequently *Rosenblatt* cannot govern the disposition of the present motion.

More important, however, is the fact that the Superseding Indictment in this action *does* meet the requirements of the court's explicit holding in *Rosenblatt.* The court concluded that,

> We hold that when the government proceeds under the conspiracy-to-defraud

---

**3.** Paragraph 25 of the Superseding Indictment provides, in relevant part, that:

> It was further part of the conspiracy that the defendants ... and others would and did testify falsely under oath in connection with an FAA administrative proceeding to conceal the

fact that written and computerized maintenance records had been falsified to make it fraudulently appear that scheduled maintenance and corrective repairs had been completed on [Eastern's] aircraft.

clause it must plead and prove an agreement with respect to the essential nature of the alleged fraud. Thus, just as the particular offense must be specified under the "offense" branch ... the fraudulent scheme must be alleged and proved under the conspiracy-to-defraud clause.

*Id.* at 42 (citation omitted). In this action, the Superseding Indictment pleads an agreement among and between defendants with respect to the essential nature of the alleged fraud; namely, obstructing the functions of the FAA by misrepresenting the safety of Eastern's aircraft. Paragraph 18 of the Superseding Indictment reads in part as follows:

> On or about and between January 1, 1987 and October 13, 1989 ... [defendants] ... did unlawfully, wilfully and knowingly conspire, combine, confederate and agree to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the [FAA] to promote safety of flight of civil aircraft in air commerce and insure that aircraft are in a safe condition and are properly maintained.

The Superseding Indictment then states in subsequent paragraphs that it was part of the conspiracy to use intimidation to encourage falsification of aircraft maintenance records; falsify log books, work cards and computer entries; disregard FAA maintenance program requirements; conceal the falsifications from the FAA; testify falsely before the FAA; and cause aircraft that were not properly maintained and repaired to fly and carry unsuspecting passengers.

■ The government has therefore alleged a single, overarching conspiracy among and between the Atlanta and JFK defen-

dants, and Upton, the essential nature of which was to impede and obstruct the FAA. Because the Superseding Indictment pleads "an agreement with respect to the essential nature of the alleged fraud," it does not run afoul of the Federal Rules of Criminal Procedure. Defendants' reliance on *United States v. Levine,* 546 F.2d 658, 665–66 (5th Cir.1977) ("since allegations of proximate conspiracies are legally insufficient to establish a single overall conspiracy, the conspiracy count could not 'reasonably have been made.' "), is, therefore, misplaced as well. As the court noted in *Uccio,* 917 F.2d at 87, "[i]t is an 'established rule' that 'a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed.R.Crim.P. 8(b)." "[W]hether the evidence in a case establishes single or multiple conspiracies is a question of fact to be resolved by a properly instructed jury." *United States v. Friedman,* 854 F.2d 535, 561 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989).[4]

### B. *Severance of Atlanta Defendants*

Rule 14 of the Federal Rules of Criminal Procedure permits severance at the discretion of the court. The rule provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder of defendants in an indictment ... or by such joinder for trial together, the court may ... grant a severance of defendants or provide whatever other relief justice requires."

■ Generally, there is a presumption that persons indicted together should be tried together. *See United States v. Gallo,* 668 F.Supp. 736, 748 (E.D.N.Y.1987). This presumption was designed to promote judicial economy by preventing multiple, time-con-

4. In the alternative to dismissing the Superseding Indictment, defendants request that the court issue an order directing the government to submit, *in camera* and *ex parte,* a written offer of proof demonstrating participation by all defendants in a single conspiracy. This relief was granted in *United States v. Marcus Schloss & Co.,* 710 F.Supp. 944 (S.D.N.Y.1989). This is an extraordinary remedy and rarely used. It is unnecessary in this case because, as noted above, the Superseding Indictment adequately pleads a single conspiracy by all defendants to defraud the United States. The Superseding Indictment also

pleads that obstruction of the FAA proceedings was in furtherance of the main criminal objectives of the conspiracy, and was not executed simply for purposes of covering up after the crime. Defendants' reliance on *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (where government files tax fraud conspiracy indictment after the statute of limitations had run, the subsidiary conspiracy to conceal the crime cannot be regarded as part of the original conspiracy for the purpose of bringing it within the statute of limitations), is therefore misplaced.

suming and expensive trials. *United States v. Borelli*, 435 F.2d 500, 502 (2d Cir.1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971). A defendant may overcome this presumption by demonstrating that a joint trial would result in substantial prejudice and that he or she will be denied a fair trial. *United States v. Crozzoli*, 698 F.Supp. 430, 437 (E.D.N.Y.1988).[5]

 In determining whether sufficient prejudice exists to justify severance, the following criteria should be considered: (1) the number of defendants; (2) the number of counts; (3) the complexity of the indictment; (4) the estimated length of trial; (5) disparities in the amount or type of proof offered against each defendant; (6) disparities in the degrees of involvement by each defendant in the overall scheme; (7) possible conflict between various defense theories or trial strategies; and (8) prejudice from evidence admitted against co-defendants which is inadmissible or excluded as to a particular defendant. *United States v. Gallo*, 668 F.Supp. at 749. None of these factors is by itself dispositive. Instead, the court must consider them together to determine whether the jury will be able to attribute the evidence accurately as to each defendant. *Id.* In this case, several factors suggest that such compartmentalization might be difficult and prejudice could result to the Atlanta defendants, justifying severance under Rule 14. Discussion of the relevant factors follows.

1. *Complexity.* "As the number of counts and defendants in an indictment increases, 'it is obvious' that the resultant complex trial record makes it more difficult for a jury to keep straight the specific evidence and charges against each defendant." *Id.* In this case there are 13 defendants and 29 counts. None of the Atlanta defendants are charged with substantive violations alleged to have occurred at JFK. However, the substantive acts alleged in the Atlanta airport counts—installation of faulty equipment and falsification of related documents—are similar in kind to the acts alleged in the JFK counts.[6] The jury in this case may find it difficult to distinguish the evidence relating to the Atlanta defendants from that relating to the others, especially after a long and complicated trial.

2. *Disparate Evidence.* The difficulties of a complex case such as this one are compounded for defendants who are named in a small portion of the indictment and against whom only a small portion of the evidence is relevant. *United States v. Branker*, 395 F.2d 881, 888 (2d Cir.1968), *cert. denied*, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969). In the present case, absent severance, the Atlanta defendants would have to endure a trial involving many incidents of misconduct which do not involve them. *See id.* The accumulation of evidence during the course of trial places the uninvolved defendants at risk of "spillover" because the jurors may not be able to prevent themselves from attributing the evidence to the uninvolved defendants. The result would be unfair prejudice to the uninvolved Atlanta defendants.

3. *Judicial Economy.* Even if the risk of prejudice discussed above does not rise to the level where severance would be *required*, another factor—the efficient administration of justice—tips the balance in favor of severance. *See Gallo*, 668 F.Supp. at 753. In the present case, severing the trial would promote judicial efficiency and would not result in judicial waste, as is often argued in opposition to severance motions. *See id.* Sever-

---

5. It should be noted that although the government does not concede that defendants will be prejudiced by one trial, it states in its opposition memorandum, at 22, that it would consent to separate trials under certain conditions. ("Nonetheless, the government would consent to a severance of the newly added defendants to the extent it would result in a prompt trial of all of the originally indicted defendants.")

6. *Compare* Paragraph 20 ("defendants [Moser, Catarelli, Jean, Hardy, Jones and Knox] ... falsif[ied] and caus[ed] to be falsified log books ... at JFK to make it fraudulently appear that scheduled maintenance and corrective repairs had been completed on aircraft, when they well knew and believed that the work had not been completed."), *with* Paragraph 21 ("defendants [Hay, Huffman, Bray, Stooksbury and Zuegel] ... falsif[ied] and caus[ed] to be falsified logbooks ... to make it fraudulently appear that required corrective repairs had been completed on Eastern aircraft at Hartsfield Airport in Atlanta when they well knew and believed that the corrective repairs had not been completed.").

ance would minimize the hardship experienced by the Atlanta defendants who would have to relocate to New York during what, in all likelihood, will be a long and complex trial. Severance would reduce the tedious, draining process that jurors would otherwise endure for months at a time. Severance would also enhance defendants' ability to obtain counsel of their choice; many lawyers are not available for representation for long trials because they are members of very small firms and cannot afford to sacrifice their other clients during a protracted trial. *Id.* Severance will also help prevent defendants from sitting through months of trial, which causes severe disruption to employment and home life, or, if detained, causes prolonged incarceration while defendants are presumed innocent.

Trial judges also face a great problem of trial management in prolonged cases. Juggling various attorneys' schedules with the other cases before the court becomes impossible. "The already overburdened docket of the court reaches a breaking point, and the administration of justice in *all* of the court's cases is unconscionably delayed.... Where the judge decides to sever the trial, the court is left with much greater flexibility to administer both that and other cases ... and some normalcy remains as to the rest of the court's docket." *Id.* (emphasis in original). Severance will help obviate many of these difficulties.

In addition, the Superseding Indictment includes a variety of substantive offenses involving different schemes, evidence and witnesses. The Atlanta defendants are not charged with participating in the acts of falsification at JFK and the JFK defendants are not charged with wrongdoing at Hartsfield. Although some of the evidence concerning conspiracy might be repeated at both trials, overall trial time would probably be reduced by dividing the case:

> The trial is much smoother and more concise. The evidence in each case does not scatter about the various contours of the conspiracy. There are [fewer] counsel cross-examining and raising objections rather than one or two dozen. Sidebars are much more infrequent. Continuances and adjournments are less common.

*Id.* at 757. Also, the second trial is likely to be shortened or even precluded by the earlier trial, as the lawyers and judge familiarize themselves with the case. *Id.* Moreover, there is a "significant possibility" that severed defendants would plead guilty after observing the government's case. *Id.* Severance may be particularly beneficial in conspiracy cases such as this one because it would protect the government "from one of the largest dangers of a joint trial, namely, proving to the jury that one conspiracy exists rather than multiple conspiracies linked at the top. The necessity of having the jury find a *single* conspiracy 'can prove seriously detrimental' to the government's strategy." *Id.* at 757–58 (emphasis in original) (quoting *United States v. Sperling*, 506 F.2d 1323, 1341 (2d Cir.1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975)).

A separate trial of the Atlanta allegations would not involve much evidence relating to the JFK defendants and would not involve the same witnesses. In short, severance would help expedite a fair resolution of the charges against defendants. Accordingly, the Atlanta defendants should be severed.

### C. *Severance of Upton and Knox*

■ Defendants argue that Upton and Knox should be severed because they were not charged with obstruction of justice, nor with any substantive act other than wire fraud. They argue that a joint trial would risk prejudicial "spillover" or "rubbing off" of evidence.

Defendants' arguments are without merit and Upton and Knox should be tried with the JFK defendants. Unlike the allegations against the Atlanta defendants, those against Upton and Knox are integrally related and intertwined with the JFK defendants. It matters not that Upton and Knox were not charged with the same substantive acts as the others; Upton is alleged to be a ringleader of the conspiracy,[7] and Knox to have

---

7. Paragraph 19 of the Superseding Indictment provides, in relevant part, that "[i]t was part of

the conspiracy that the defendants [Upton, Lewis and Hay] ... institute[d] and effectuate[d] vari-

engaged in "pencil whipping" while at JFK. It is proper that Knox and Upton stand trial with their alleged co-conspirators. At the close of trial the court will instruct the jury that the guilt or innocence of the defendants must be determined individually. With proper instructions, the jury will be able to compartmentalize the evidence. Also, once the Atlanta defendants are severed, there will be many fewer defendants in the case, making it that much easier for the jury to evaluate and compartmentalize the evidence.

Finally, the judicial management benefits realized by severing the Atlanta defendants would not be furthered by severing Upton and Knox. Their trial, which the government estimates would last several weeks, would require duplicative effort by the lawyers, judge, and witnesses. Accordingly, severance of Upton and Knox is not justified under Rule 14.

## II. *Motion to Dismiss Count Two*

Defendants have moved to dismiss Count Two of the Superseding Indictment on the grounds that (i) it is in violation of Rule 7(c) the Federal Rules of Criminal Procedure in that it does not include the particular wire transmissions which form the basis of the wire fraud violations (18 U.S.C. § 1343); and (ii) it is in violation of Rule 8(a) of the Federal Rules of Criminal Procedure in that its incorporation of multiple wire fraud offenses is impermissibly duplicitous.

### A. *Rule 7(c)*

■ Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that the indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R.Crim.P. 7(c)(1). The Rule performs three constitutional functions: (i) pursuant to the Sixth Amendment, it insures that the defendant is informed of the "nature and cause of the accusation," *United States v. Abrams,* 539 F.Supp. 378, 384 (S.D.N.Y.1982); (ii) pursuant to the Fifth Amendment, it prevents any person from being "subject for the same offense to be twice put in jeopardy of life or limb," *id.* (*see Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)); and (iii) pursuant to the Fifth Amendment, it prevents a defendant from being held "to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a Grand Jury," *Abrams,* 539 F.Supp. at 384 (*see United States v. Silverman,* 430 F.2d 106, 110 (2d Cir.1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971)). The constitutional requirement that no defendant be held for trial absent a presentment to a grand jury has led to the further rule that a bill of particulars cannot cure an indictment that omits an essential element of the offense. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). This constitutional requirement also mandates a prohibition against the amending of an indictment except by resubmission to the grand jury, *Abrams,* 539 F.Supp. at 384, and requires that "an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury," *id.*

■ In this action, Count Two alleges that between January 1, 1987 and March 4, 1989,[8] all defendants, together with Eastern, Dragone, and unindicted co-conspirator Michael Hennessey,[9] "did knowingly and wilfully aid and abet [Eastern] in its execution of a scheme and artifice to defraud airline passen-

---

ous policies and practices, including intimidation and coercion, designed to encourage and cause, among other things, [Eastern's] supervisory maintenance personnel to avoid and minimize flight delays and cancellations by falsifying aircraft maintenance records to make it fraudulently appear that scheduled maintenance and corrective repairs had been completed."

**8.** Paragraph 32 of the Superseding Indictment contains a typographical error and states that the acts commenced on January 1, 1986. A typo-

graphical error in an indictment does not render the indictment invalid if the essential elements of the crime are contained therein. *United States v. Williams,* 798 F.2d 1024, 1036–37 (7th Cir.1986) (indictment referring to 1983 instead of 1984 sufficient and need not be resubmitted to grand jury for amendment because merely technical error).

**9.** Michael Hennessey was a general foreman stationed at JFK.

gers and to obtain money and property by means of false and fraudulent pretenses and representations." Superseding Indictment, ¶ 29. Count Two further alleges that Eastern led its passengers to believe that "rigorous maintenance checks had been performed" on the aircrafts, when, in fact, defendants "knew and believed" that such representations were false. Superseding Indictment, ¶ 30. Defendants are also alleged to have falsified at JFK and Hartsfield, "aircraft maintenance log books and work cards" and to have made false computer transactions to make it fraudulently appear that regularly scheduled maintenance had been completed on the aircrafts when in fact such maintenance had not been completed. Superseding Indictment, ¶ 31.

■ Paragraph 32 of the Superseding Indictment alleges that for the purpose of executing the scheme, defendants,

transmit[ted] and cause[d] to be transmitted by means of wire communications in interstate commerce signals and sounds, to wit: (a) computer transactions from computer terminals located at JFK over interstate telephone lines to a computer located at [Eastern's] headquarters in Miami, Florida; (b) telephone calls between maintenance personnel at JFK, Atlanta, and Eastern's headquarters in Miami, Florida; and (c) radio transmissions between flight crews on aircraft outside of New York and air traffic controllers at JFK and LaGuardia airports to obtain clearance to take-off and land Eastern aircraft.

(Title 18, United States Code, Sections 1343, 3551 *et seq.* and 2).

Because the Superseding Indictment does not contain a list of the particular computer transactions, telephone calls, and radio transmissions, defendants argue that it is violative of Rule 7(c)'s mandate that all indictments contain a "statement of the essential facts constituting the offense charged." Defendants' contention is without merit.

■ It is well-settled that indictments which track the statutory language defining an offense are, as a general rule, sufficient for Rule 7(c) purposes so long as application to a particular defendant is clear. In *Ham-*

*ling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the Court wrote,

Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.... *It is generally sufficient that an indictment set forth the offense in the words of the statute itself,* as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." ... *"Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."*

*Id.* at 117–18, 94 S.Ct. at 2907–08 (emphasis added) (citations omitted). *See also United States v. Gordon,* 780 F.2d 1165, 1171 (5th Cir.1986) ("[A]n indictment which tracks the statutory language is sufficient to charge mail fraud ... or wire fraud....") (citations omitted).

The words of the statute at issue in Count Two, 18 U.S.C. § 1343, are as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343. As noted above, the Superseding Indictment alleges that defendants aided and abetted Eastern in its "execution

of a scheme and artifice to defraud airline passengers and to obtain money and property by means of false and fraudulent pretenses and representations"; and that they "transmitted by means of wire communications in interstate commerce [certain] signals and sounds[.]" Furthermore, far from just tracking the language of the statute, Paragraphs 29–32 of the Superseding Indictment also provide "facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 119, 94 S.Ct. at 2908. These facts and circumstances are: (i) the dates in which the activities took place (January 1, 1987 to March 4, 1989); (ii) the purpose and nature of the scheme (defrauding the flying public into believing that maintenance had been performed when in fact it had not) [10]; (iii) the means by which the objectives of the scheme were carried out (falsifying log books, work cards, and computer transactions); and (iv) the nature of the communications which were used to further the objectives of the scheme (computer transactions, telephone calls and radio transmissions).

■■■■ Research has not uncovered, and defendants have not brought to the court's attention, any authority for the proposition that an indictment pursuant to 18 U.S.C. § 1343 must include the exact "writings, signs, signals, pictures, or sounds" which comprise the basis of the charge when other relevant information regarding the nature of the crime are included in the indictment. Although it is true that Section 1343 indictments sustained by the courts tend to include this information, *see, e.g., Abrams*, 539 F.Supp. at 383 (government alleges that on "fifteen specific occasions, interstate telephone calls were made in furtherance of this scheme."), it is also the case that the two cases relied upon by defendants where the court did dismiss mail or wire fraud indictments,[11] the indictments were woefully incomplete and failed to include *any* specifics regarding the nature of the scheme or the

methods used in furtherance of the scheme. *United States v. Josten*, 704 F.Supp. 841, 844 (N.D.Ill.1989) (Section 1343 indictment dismissed where "the indictment does not state the allegedly false representations, nor does it name the victims of the allegedly improper conduct or the accounts to which it pertained, nor does it give any specific dates upon which the challenged activity took place."); *United States v. De Sapio*, 299 F.Supp. 436, 445 (S.D.N.Y.1969) (Section 1341 indictment dismissed where "[t]he charge that these defendants devised a scheme 'for obtaining money and property by means of false and fraudulent pretenses, representations and promises' does not even state who was to be defrauded, let alone give any indication of the nature of the scheme."). In other contexts, the specific transactions or documents which are at the heart of an indictment need not be specified so long as the indictment apprises the defendant of the elements of the charge against him. *See, e.g., United States v. Tallant*, 547 F.2d 1291, 1299 n. 18 (5th Cir.) (obstruction of justice indictment sustained where indictment alleges that defendant impeded the due administration of a proceeding before the Securities and Exchange Commission "in that defendant ... caused *certain* stockholder ledger ·records ... to be falsified and presented them to Securities and Exchange Commission investigators[.]") (emphasis added), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *United States v. Mobile Materials, Inc.*, 871 F.2d 902 (10th Cir. 1989) (Sherman Act indictment sustained even though indictment did not list specific transactions or name all co-conspirators), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

■■■ In any event, the government has supplied defendants with a bill of particulars which identifies those wire communications upon which it will rely at trial. As noted above, a bill of particulars cannot cure a constitutionally defective indictment, *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), but "[a] bill of particu-

---

10. The court, of course, makes no determination as to the veracity of the allegations contained in the Superseding Indictment.

11. "Because the mail fraud and the wire fraud statutes use the same relevant language, [the Second Circuit] analyze[s] them the same way." *United States v. Schwartz*, 924 F.2d 410, 416 (2d Cir.1991).

lars is appropriate when the indictment is insufficient to permit the preparation of an adequate defense." *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir.1985). With the information supplied by the bill of particulars, defendants are now on notice as to which wire communications were used to further the scheme outlined in Count Two of the Superseding Indictment and cannot now argue that they are not in a position to prepare an adequate defense.

### B. *Rule 8(a)*

█ Rule 8(a) of the Federal Rules of Criminal Procedure provides, in relevant part, that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Defendants argue that Count Two runs afoul of Rule 8(a) because each wire transmission is a separate Section 1343 offense and hence it impermissibly charges two or more offenses in the same count.

Although it is well-accepted that each separate mailing or wire transmission constitutes a separate offense under 18 U.S.C. §§ 1341 or 1343, *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir.) ("Since each mailing pursuant to an alleged scheme to defraud constitutes a separate offense ... the indictment is not vulnerable to a claim of multiplicity.") (citations omitted), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970), the Second Circuit has held that an indictment charging mail fraud is not impermissibly duplicitous because it alleges numerous mailings in a single count. *United States v. Margiotta*, 646 F.2d 729 (2d Cir.1981). In *Margiotta*, the indictment accused the defendant of arranging a scheme whereby town and county insurance was placed with an insurance broker and the broker paid portions of his commissions to various persons designated by the defendant. Payments were made through the mails and count one of the indictment, alleging a violation of 18

U.S.C. § 1341, included numerous mailings. By pre-trial motion, the defendant sought dismissal of count one alleging that the count was duplicitous for including more than one mailing. The district court granted the motion and the Second Circuit reversed.

The court in *Margiotta* held that the use of multiple mailings in a mail fraud indictment does not violate the rule against duplicity because

> a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses ... but only when the failure to do so risks unfairness to the defendant. That risk is slight in a case like this where the essence of the alleged wrong is the single scheme to defraud and the various mailings, though they are technically the acts that violate the federal statute, are really the jurisdictional bases for federal prosecution. *See United States v. Blassingame*, 427 F.2d 329 (2d Cir.1970), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1629, 29 L.Ed.2d 114 (1971) (involving similar statute condemning fraud by wire, 18 U.S.C. § 1343 (1976)).

*Id.* at 733 (citation omitted). The court reasoned that any potential unfairness to the defendant which might spring from including several mailings in a single indictment can be easily avoided via proper jury instructions: "We anticipate no unfairness to the defendant if the jury, properly instructed, is permitted to convict on Count One upon finding all the elements of mail fraud established, including the mailing of at least one item in furtherance of the scheme to defraud." *Id.*

*Margiotta* controls this aspect of defendants' motion. The indictment in *Margiotta* alleged a scheme to defraud the public and the goals of the scheme were realized through the use of interstate mails; in this case, Count Two alleges a scheme to defraud the flying public by means of, among other things, the use of interstate wire transmissions. Defendants attempt to distinguish *Margiotta* on the grounds that the interstate wire transactions are an "inherent part of the alleged wrong," Defs.' Mem. at 21 n. 15, whereas the use of interstate mails in *Margi-*

*otta* were to establish jurisdiction. Defendants are correct that the government has alleged that the specific wire transactions themselves were fraudulent (*i.e.,* they reported maintenance check-ups which never occurred),. and that such was not the case in *Margiotta* (the checks for the insurance premiums were mailed in execution of the scheme to defraud), but it is a distinction without a difference: Both the indictment in *Margiotta* and the Superseding Indictment in this action allege a scheme to defraud the public, *and the scheme in both cases is executed through the use of interstate communications.* The fact that one set of interstate communications is allegedly inherently fraudulent is irrelevant; in both cases the policy considerations underlying the prohibition against duplicity, as articulated by the court in *Margiotta,*[12] do not compel a conclusion that Count Two is impermissibly duplicitous. Appropriate jury charges will assure a unanimous verdict; the indictment gives defendants adequate notice of the charges alleged; and defendants' double jeopardy rights will be protected. Because there is no prejudice to defendants by including several interstate transmissions in the Section 1343 count, dismissal is unwarranted. This conclusion is bolstered by the fact that, in other contexts, where separate acts which constitute separate violations of a criminal statute are committed as part of a single scheme, the indictment is not dismissed for impermissible duplicity. *See, e.g., United States v. Alsobrook,* 620 F.2d 139, 142–43 (6th Cir.) (inclusion of more than one act of interstate travel in a single count alleging a violation of The Travel Act, 18 U.S.C. § 1952, is not impermissibly duplicitous because each act was part of a continuing course of conduct that represented only a single offense), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980).

### III. Motion to Dismiss Obstruction of Justice Counts

Defendants have also moved to dismiss Counts 23 through 28 which allege as follows:

On or about the dates listed below, within the Eastern District of New York, the listed defendants did knowingly, wilfully and corruptly obstruct and impede and endeavor to obstruct and impede the due and proper administration of the law under which a pending proceeding was being held before the Federal Aviation Administration of the Department of Transportation, an agency of the United States, to wit: each testified falsely regarding his knowledge of and participation in a conspiracy to falsify maintenance records[.]

(Title 18, United States Code, Sections 1505, 3551 *et seq.* and 2).

Superseding Indictment, ¶ 74. The Superseding Indictment then lists the date each listed defendant allegedly falsely testified before the FAA. Defendants seek to have these counts dismissed on the grounds that (i) they are in violation of Rule 7(c) in that they are not pleaded with the requisite particularity; and (ii) the lack of specificity improperly precludes defendants from invoking the "exculpatory no" doctrine as a defense.

#### A. Rule 7(c)

■ The criteria for analyzing the constitutional soundness of an indictment is discussed above in Section II.A of this memorandum and order and need not be repeated. As noted there, an indictment is valid if, as a general rule, it tracks the language of the statute and gives the defendant enough information so that he or she may properly prepare a defense, effectively plead double jeopardy, and insures that any conviction is the result of an indictment that was presented to the grand jury. *United States v. Gordon,* 780 F.2d 1165, 1169 (5th Cir.1986) ("An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense."). Because Counts 23–28 meet all of these criteria, dismissal would be improper.

12. "These [policy considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." *Id.*

The statute which defendants are alleged to have violated, reads in relevant part as follows:

> Whoever corruptly, or by threats of force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress—
>
> Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1505. The Superseding Indictment in this case accurately tracks the language of the statute: Defendants are alleged to have "endeavor[ed] to obstruct and impede the due and proper administration of the law under which a pending proceeding was being held before the [FAA]." The Superseding Indictment lists the name of the agency involved; the dates of the hearings; and the manner in which defendants allegedly impeded its function (*i.e.*, testifying falsely regarding knowledge of the conspiracy to falsify maintenance record).

The extent to which Counts 23–28 are adequately pleaded is illustrated by the court's determination in *United States v. Alo*, 439 F.2d 751 (2d Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971). In *Alo*, the defendant was convicted of violating 18 U.S.C. § 1505 by obstructing the Securities and Exchange Commission's administration of the federal securities laws by virtue of his testimony before the Commission in which he claimed to remember very little about certain meetings that had taken place eighteen months before. The indictment recited that the defendant did "unlawfully, wilfully, knowingly and corruptly obstruct and impede and endeavor to obstruct and impede the due administration of laws of the United States ... under which a proceeding ... before a department and agency of the United States ... was then pending and being had...." *Id.* at 756. The indictment amplified the allegations by stating that the defendant "[gave] false and evasive answers to questions put to him as a witness in such proceeding" and gave specifics as to date, statute, and name of the administrative agency and proceeding. The defendant moved to dismiss claiming that the indictment lacked the requisite specificity. The Court of Appeals disagreed and dealt with the defendant's argument in a single paragraph:

> Alo's objection to the supposedly vague indictment is that it failed to apprise him of the "nature and cause of the accusation." Considering the fact that Alo's forgetfulness was the constant theme of his testimony before the SEC, we have little doubt that, although somewhat greater specificity would have been advisable, he understood precisely what the phrase "false and evasive answers" referred to.

*Id.* (footnote omitted). The court was not troubled by the fact that the indictment did not recite which answers were "false and evasive" and therefore defendants' argument in this case that the Superseding Indictment is defective because it does not include the subject matter of each allegedly false statement is equally unavailing.[13]

Defendants argue, however, that the counts should be dismissed because they do not meet the standards for charging perjury in that the charging paragraph does not describe with particularity the falsehood which forms the basis of the offense. *See, e.g., United States v. Tonnelli*, 577 F.2d 194, 200 (3d Cir.1978) (perjury indictment dismissed

---

**13.** Defendants seek to distinguish *Alo* on the grounds that the court noted that bills of particulars provided the defendant with a transcript of his testimony before the Commission and specified the manner in which the answers were false. *Id.* The court in *Alo*, however, did not base its determination that the indictment was constitutionally sound on the bills of particulars. It noted that "[t]he last traces of any lingering doubts," *id.*, as to the nature of the falsity alleged in the indictment were put to rest by virtue of the bills of particulars. The case does not stand for the proposition that had there been no bill of particulars the indictment would have been dismissed. Given that a bill of particulars cannot cure a constitutionally defective indictment, the court could not have so held.

because it did not set forth the precise falsehoods alleged and the factual bases of their falsity). This argument was squarely rejected by Judge McLaughlin in *United States v. Schwimmer*, 649 F.Supp. 544 (E.D.N.Y.1986), where a defendant was charged with a violation of 18 U.S.C. § 1503.[14]

In *Schwimmer*, it was alleged that the defendant obstructed the administration of justice by causing the creation of a false and fabricated document and its submission to a grand jury. The defendant sought dismissal of the indictment on the ground that the indictment failed to identify the allegedly falsified document which the defendant was accused of having caused to be submitted to the grand jury. As the court reported, "[d]efendant argues that his case may be analogized to a perjury prosecution, and cites several cases ... that stand for the proposition that a perjury indictment must set out specifically the allegedly perjurious statement." *Id.* at 547 (citation omitted). The court rejected this argument, noting that "[t]his is not, however, a perjury case." *Id.* The court upheld the validity of the indictment because,

> An indictment under section 1503 is sufficient if it "furnishes sufficient information as to the time, place and essential elements of the crime to enable the defendants to prepare for trial and avoid a claim of double jeopardy. *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir.1973) [*cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974)]." *United States v. Weiss*, 491 F.2d 460, 466 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974).

*Id.* As with the indictment in *Schwimmer*, the Superseding Indictment in this action sets forth the time, place and essential elements of the crime and is therefore valid. Because these counts allege a violation of 18 U.S.C. § 1505, and not the perjury statute, 18 U.S.C. § 1623, defendants' arguments are inapplicable.

### B. *Exculpatory No Doctrine*

 Defendants also seek dismissal of the obstruction of justice counts on the theory that their alleged lack of specificity precludes them from invoking the "exculpatory no" doctrine as a defense. This doctrine "immunizes direct denials of criminal wrongdoing made in response to questions, irrespective of their falsity, from prosecution under [18 U.S.C.] Section 1001." *United States v. Cervone*, 907 F.2d 332, 342 (2d Cir.1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991). The Second Circuit has never formally adopted this doctrine in the context of either Section 1001 or Sections 1503 or 1505. "We have never adopted the doctrine ... but have indicated that were we to adopt it, it would be construed narrowly[.]" *Id.* (citing *United States v. Capo*, 791 F.2d 1054, 1069 (2d Cir.1986), *rev'd in part on other grounds on rehearing en banc*, 817 F.2d 947 (2d Cir.1987)). Even in those situations where the Second Circuit has addressed the defense in Section 1001 cases, it has made clear that "affirmative, voluntary statement[s], which are readily distinguishable from simple exculpatory denials in response to investigator's questions, would not be within the exception." *Capo*, 791 F.2d at 1069 (internal quotations omitted).

In *United States v. Biaggi*, 909 F.2d 662, 687 (2d Cir.1990), *cert. denied*, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991), the defendant was found guilty of violating 18 U.S.C. § 1503 when he denied having received a bribe in response to questions by federal agency officials. The court declined to extend the exculpatory no doctrine to Section 1503 cases and noted that, even if it were to be adopted for such proceedings, it did not apply because the defendant's responses went beyond bare denials. In this case, defendants argue that because each defendant gave simple denials when asked by FAA officials whether they participated in the falsification of records, the doctrine should be made available to them. Defendants argue that because the indictment does not specify upon which denials the government relies in its Section 1503 charge, they

---

**14.** This statute makes illegal the act of endeavoring to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States.

are denied the opportunity to assert the defense.

Defendants' position is unpersuasive for several reasons. First, as defendants concede, the Second Circuit has yet to formally adopt the exculpatory no doctrine in *either* Section 1001 cases or Section 1505 cases, and has made it clear that even if it were to adopt it, it would be construed narrowly. *See, e.g., United States v. Roshko,* No. 90 Cr. 265, 1991 WL 18146 at *6 (S.D.N.Y. Feb. 7, 1991) (exculpatory no doctrine is inapplicable in Section 1001 action where defendant gave false statements to Immigration and Naturalization Service agent because the interview was not part of a government initiated investigation in which defendant was compelled to answer). Second, even if this court were to recognize the defense in a Section 1505 action, the doctrine would not apply in this case because even a simple exculpatory no in response to the query of a federal agent does not fall within the exception if that answer affirmatively misleads the agent. In *Cervone,* the defendant was convicted of a violation of 18 U.S.C. ·§ 1001 on the basis of his denial in a interview at his office with New York City police detectives of ever having spoken to a co-defendant about certain coalitions or minority hiring practices in the construction industry. The court rejected his exculpatory no defense, explaining:

> As to Cummings, his remarks were not truly exculpatory. Certainly no incriminating consequences were to be feared from a truthful answer to the inquiry as to whether he had even discussed minority hiring problems with Cervone. *Even if the conversation with the officers ended after that particular false statement, Cummings would have affirmatively misled them,* perhaps causing them to direct their investigation elsewhere. Cummings' denial of any talks regarding the minority hiring situation thus falls within the currently recognized ambit of the statute.

*Cervone,* 907 F.2d at 343. Therefore, if defendants' denials of participation in a scheme to falsify maintenance records affirmatively misled the FAA, the doctrine would not apply. Finally, because defendants answered questions at a deposition under oath, pursu-

ant to a subpoena, and with the aid of counsel, they were not "taken by surprise or otherwise cornered into a defensive, ill-considered misstatement," *id.,* and hence the exculpatory no doctrine does not apply.

## IV. *Discovery Motions*

Defendants have moved this court for orders compelling the government to comply with their discovery requests; to produce *Brady* materials; and to provide a Bill of Particulars.

Rule 16 of the Federal Rules of Criminal Procedure provides the protocol for discovery in criminal cases. Subdivision (a)(1)(C) of that Rule is specifically relevant and provides:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs ... or copies or portions thereof which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial[.]

Defendants categorize their discovery request as follows: (1) those designed to enable them to understand the nature and scope of the accusations against them; (2) those seeking documents material to the preparation of their defense; and (3) those seeking exculpatory or impeachment materials. Defs.' Mem. at 7.

### A. *Understanding the Charges*

██ Even a casual perusal of the Superseding Indictment compels the conclusion that the assertion of an inability to understand the nature and scope of the charges is disingenuous. The alleged violations of 18 U.S.C. §§ 371 and 1001 charged in 21 counts of the Superseding Indictment precisely identify the defendants, the documents allegedly falsified, the maintenance item to which it pertains and the aircrafts affected. For example, in the section of the Superseding Indictment entitled "Overt Acts," in Paragraph 27(b), the following items, among others, are provided:

| Date | Eastern Employees | Aircraft | Falsified Documents | Items of Maintenance |
|---|---|---|---|---|
| 5/7/87 | ROBERT ZUEGEL | 303 | Log Book | Repair of malfunctioning engine pressure ratio gauge. |

Count Two, charging the defendants with a violation of 18 U.S.C. § 1343 (fraud by wire) alleges that the named defendants transmitted computer transactions from computer terminals at JFK over interstate telephone lines to a computer in Miami; interstate telephone calls between maintenance personnel and Eastern's headquarters in Miami, Florida and radio transmissions between flight crews and air-traffic controllers. As noted above, in its opposition to the motions to dismiss, the government provided defendants with a list of "the specific wires the government intends to rely upon at trial as having been made for the purpose of executing the scheme to defraud charged in Count Two of the Superseding Indictment." Gov't's Mem., Appendix. Defendants, therefore, can no longer complain that they have been deprived of the particulars needed to understand the charges against them.

Counts 23–28 allege that the defendants named violated 18 U.S.C. § 1505 (obstructing proceedings before the FAA) by testifying falsely on a stated day. As noted above, the Superseding Indictment provides defendants with the date of the testimony and the name of the agency to which defendants allegedly testified falsely. Also as noted above, the government has apprised defendants, in its opposition to the motions to dismiss, that it plans at trial on relying upon the very answers cited by defendants in their moving papers, among others. Defendants, therefore, are now on notice as to the alleged false statements at issue in these counts.

■ Insofar as the document requests are concerned, the government flatly and unequivocally states that it has produced virtually everything in its files with the exception of grand jury transcripts and impeachment material which will be addressed hereafter. As is not infrequently the case, in what can fairly be described as extensive memoranda of law and more extensive appendices to those memoranda, complaints by defendants abound to the effect that legitimate requests are ignored and responses by the government abound to the effect that the requests have either been fully complied with or are not legitimately made. To the extent that the government represents that it "has produced every document in its possession which relates in any way to this case" Gov't's Mem. at 7, the court must assume the veracity of that representation. The alternative to such an assumption would require the court to examine numerous file drawers of documents to verify that representation which is as obviously undesirable as it is impractical.

■ As a matter of law, mere speculation by a defendant that the government has not fulfilled its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is not enough to establish that the government has, in fact, failed to honor its discovery obligations. This is especially so when, as in this case, the government has maintained an "open file" policy. *United States v. Driver,* 798 F.2d 248, 250 (7th Cir. 1986) ("Driver's speculation that the government might not have disclosed all of the information in its possession about the co-conspirators falls far short of establishing that the prosecution suppressed exculpatory evidence.... Indeed, in this case the government maintained an open file policy, under which it afforded Driver access to all of its files pertaining to his case."). The government is under no obligation to turn over that which it does not have. *United States v. Zavala,* 839 F.2d 523, 528 (9th Cir.) (per curiam) (no *Brady* violation in failure to disclose probation reports with statements of various government witnesses because reports in control of probation department, not prosecution), *cert. denied,* 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988).

1. *Identifying Documents to Be Relied Upon at Trial*

■ The essence of the dispute is not that the government has not produced the documents, but that it has not isolated the documents that are relevant and may be offered at trial which would spare the defendants the task of examining all the documents. In this regard, defendants rely on, among other authorities, *United States v.*

*Turkish,* 458 F.Supp. 874 (S.D.N.Y.1978). In *Turkish,* the defendant "[sought] a direction to the government to indicate which of the approximately 25,000 documents relating to this case in the government's possession it intends to use at trial, rather than 'bury[ing] the defendant in paper' by merely generally making all of the documents available to defendants." *Id.* at 882. The court granted the defendant's motion because, the court reasoned, Rule 16 requires that the government allow the defendant to inspect and copy all documents "which will be relied on or referred to in any way by any witness called by the government during its case in chief." *Id.* (quoting *United States v. Countryside Farms, Inc.,* 428 F.Supp. 1150, 1154 (D. Utah 1977)).

Defendants also draw the court's attention to *United States v. Poindexter,* 727 F.Supp. 1470 (D.D.C.1989), where the government produced over 300,000 pages of documents and was, at the time of the discovery motion, prepared to produce approximately 100,000 additional pages. Like the defendant in *Turkish,* and in this action, the defendant in *Poindexter* argued that it was improper for the government to do no more than "identify several thousand pages, any of which it 'may' rely on at trial." *Id.* at 1484. The court agreed that "[t]his broad brush approach ... is not sufficient to meet [the government's] obligations." *Id.* With very little discussion, the court concluded that, based on "fairness to the defendant, the protection of his rights, and not least Rule 16(a)(1)(C)," *id.,* the government must,

> identify with greater specificity those among these thousands of documents in the financial, calendar, and diary areas that it intends to use at trial. This notification will not prevent the government from later [sic] introducing other documents from these materials on a limited scale, but it will give the defendant some notice as to which among the thousands of documents are likely to be part of the government's case-in-chief.

*Id.* (citing *Turkish* ). The court in *Poindexter* also ordered the government to identify all documents upon which a witness will rely or to which he will refer. *Id.*

In *United States v. Bortnovsky,* 820 F.2d 572 (2d Cir.1987), the government also contended that it had fulfilled its obligations to inform the defendants of the charges against them by allegedly being specific in the indictment and providing over 4,000 documents. The twelve count indictment included a violation of the mail fraud statute and conspiracy to defraud the United States by virtue of a scheme whereby the defendants submitted false claims for burglary to the Federal Insurance Administration and the New York Property Insurance Underwriting Association. The indictment provided a list of the suspect pieces of mail along with their approximate dates of mailing and addressees but did not enumerate which of numerous documents were falsified or the dates of the allegedly staged burglaries.

The Court of Appeals reversed the convictions because it concluded that the defendants "were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the date of the fake burglaries and the identity of the three fraudulent documents." *Id.* at 574. The court reasoned that the burden of proof had been impermissibly shifted to defendants because they were forced to explain events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending. *Id.* at 574–75. The court wrote,

> The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.

*Id.* at 574.

In this case, it is uncontroverted that the government has produced thousands of pieces of paper and of those thousands of documents the Superseding Indictment puts the defendants on notice of only a handful of items which the government contends is fraudulent. If it were the case that these were the only documents the government intended to rely upon at trial, defendants' position would not merit much discussion; it is not the job of the government to neatly

organize and separate the documents for the defendants. However, it is not clear that the government will restrict its proof to the documents cited in Paragraph 27(b) of the Superseding Indictment. In its memorandum in opposition, the government states that "the defendants have known *for over seven months* the specific instances of records falsification the government will seek to prove at trial." Gov't's Mem. at 10 (emphasis in original). However, the government also says that it will, prior to trial, designate its trial exhibits. It could be, therefore, that the government plans on introducing allegedly falsified maintenance records other than those specified in the Superseding Indictment. If that is the case, the reasoning of *Turkish, Poindexter,* and *Bortnovsky,* and the language and policy concerns of Rule 16, require that the government provide defendants with adequate notice of the allegedly falsified documents upon which it plans to rely at trial in order to allow them to adequately prepare their defense. This analysis applies with equal force to defendants' request that the government provide a list of all documents to be referred to or relied upon by government witnesses.

The government, however, argues that it need not inform defendants of the documents upon which it plans to rely at trial because (i) former defendant Eastern is the source of approximately 90 percent of the discovery documents; (ii) defendants are familiar with the significance of the document; (iii) the Superseding Indictment lists 33 specific acts of records falsification; and (iv) the government will provide trial exhibits prior to trial. None of these arguments are availing because they do not adequately explain why defendants should be kept in the dark until trial as to which specific documents the government will contend were falsified in furtherance of the scheme outlined in the Superseding Indictment. Finally, the government attempts to distinguish *Poindexter* and *Bortnovsky* on the grounds that those cases involved government documents with which the defendants had little or no familiarity. This is a distinction without a difference: The *purpose* of requiring the government to identify which documents it will rely upon at trial in a situation such as this—where there are thousands of documents—is to allow the defendant to adequately prepare his or her defense. General familiarity with the nature of the documents, as in this case, will not allow defendants to do that if they are not informed which documents include the allegedly falsified maintenance information and which documents the government witnesses will refer to or rely upon.

### B. *Material Needed For Preparation of Defense*

Defendants request that this court compel the government to produce materials which are needed for the preparation of their defense. The bulk of their 73 page brief is devoted to identifying certain materials which they deem are essential to their preparation and with which the government has allegedly failed to produce: (1) materials bearing on the credibility of prospective government witnesses; (2) exculpatory evidence; (3) materials bearing on defendants' contention that the Superseding Indictment is a product of a union vendetta against Eastern; and (4) materials bearing on defendants' contention that they are the victims of selective prosecution. As noted above, however, the government steadfastly insists that it has already turned over every document relevant to this action, with certain exceptions discussed below. Gov't's Mem. at 13 ("the government has produced virtually everything in its files."). Because the government is under no obligation to turn over that which it does not have, *United States v. Mabry,* 809 F.2d 671, 686–87 (10th Cir.) (no *Brady* violation in failure to disclose potentially exculpatory evidence prior to trial because evidence not included in police report and not known to government before trial), *cert. denied,* 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987), it cannot be said that the government is in violation of its discovery obligations. As the court stated in *United States v. Evanchik,* 413 F.2d 950, 953 (2d Cir.1969), "the assurance by the government that it has in its possession no undisclosed evidence that would tend to exculpate defendant justifies denial of a motion for inspection that does not make some particularized showing of materiality and usefulness."

### 1. *Discovery From Other Agencies*

■ Defendants argue that the government is also under an obligation to search the files of the FAA and produce any material responsive to their legitimate *Brady* and Rule 16 requests. Defs.' Mem. at 13 ("Not only must they produce responsive materials in the custody and control of their office, but they must also produce any such materials in the custody or control of those federal agencies that have played a role in this case or in the investigation that led to the [Superseding] Indictment.").[15]

Rule 16 provides for the discovery of documents and tangible objects which are "within the possession, custody or control of the government." Fed.R.Crim.P. 16(a)(1)(C). The question, therefore, is whether agencies other than the United States Attorney's Office should be considered part of the "government" for Rule 16 purposes in cases such as this. In support of their position that the government is required to produce all FAA materials which are responsive to their requests, defendants rely on *United States v. Guerrerio,* 670 F.Supp. 1215 (S.D.N.Y.1987), and *United States v. Shakur,* 543 F.Supp. 1059 (S.D.N.Y.1982).[16]

In *Guerrerio,* the court denied the defendants' request that the United States Attorney's Office produce the grand jury minutes which were the product of a Bronx County District Attorney's Office investigation because the court found, even without the benefit of a hearing, that there was no joint investigation by the two offices. Because the two offices did not investigate the matter jointly, neither Rule 16 nor *Brady* required that the United States Attorney's Office disclose materials uncovered by the Bronx District Attorney:

> [T]his court finds that in the face of the affidavits submitted by the government, the defendants' claim that the government, through a joint investigation with the Bronx District Attorney, has control of the material sought is insufficient to prompt an evidentiary hearing. Furthermore, as this court finds that there was no joint investigation, and that the government has no possession, custody, or control of the Bronx material, the defendants' motion pursuant to Fed.R.Crim.P. 16 is denied.
>
> Similarly, ... *Brady* does not require the government to search for exculpatory material not within its possession or control.

*Id.* at 1219–20 (footnote omitted). Using the same analysis, the court in *United States v. Shakur,* 543 F.Supp. 1059 (S.D.N.Y.1982), reached the opposite conclusion and ordered the United States Attorney's Office to turn over all *Brady* material uncovered by the Rockland County District Attorney because "[t]he United States does not dispute that there has been and still is cooperative activity between him and the District Attorney of Rockland County with respect to the alleged crime charged in this indictment." *Id.* at 1060.

The key to the analysis, therefore, is the level of involvement between the United States Attorney's Office and the other agencies. *United States v. Poindexter,* 727 F.Supp. 1470, 1477 (D.D.C.1989) ("Rule 16(a)(1)(C), requires only the production of documents in the hands of the prosecutor, any investigative unit under the prosecutor's control, and any other federal agency allied with the prosecution or involved in the prose-

---

**15.** Defendants also seek materials from the Department of Justice Office of Professional Responsibility, the Department of Transportation and the National Transportation Safety Board.

**16.** Defendants also argue that where the government charges obstruction of justice of a federal agency, the United States Attorney's Office is obliged to produce *Brady* and Rule 16 materials from that agency. In support of this argument defendants rely on *United States v. Deutsch,* 475 F.2d 55 (5th Cir.1973), *overruled on other grounds, United States v. Henry,* 749 F.2d 203 (5th Cir.1984), where the court held that it was

error for the district court to deny defendant's request for the personnel file of a Post Office employee whom defendant had sought to bribe. The case is inapposite because in *Deutsch* the government sought to use this Post Office employee as its principal witness while at the same time denied having access to Post Office files. Here, the government has not stated that it plans on using the two FAA agents as principle witnesses while at the same time denying having access to FAA files. In fact, the government continues to insist that it has already turned over all relevant FAA material in its possession.

cution of criminal litigation."). To the extent that the government relies on the maxim articulated above that the government need not produce that which it does not have, *e.g., United States v. Quinn,* 445 F.2d 940, 943–44 (2d Cir.) (no error where United States Attorney in New York failed to produce a sealed indictment brought against government witness in Florida), *cert. denied,* 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971), the cases are inapposite. The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a "joint investigation" with another agency. *See United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir.) ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."), *cert. denied,* 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989).

■ In this case, unlike in *Guerrerio,* the court is without the benefit of affidavits recounting the relationship between the FAA and the United States Attorney's Office as it relates to the investigation which culminated in the Superseding Indictment. In its memorandum in opposition, however, the government states that,

> The investigation and prosecution of this case has been conducted by the United States Attorney's Office, with the assistance of two FAA inspectors and the Postal Inspection Service. Neither the Department of Transportation, the National Transportation Safety Board, nor the Department of Justice Office of Professional Responsibility have played any role in the investigative [sic] or prosecution of this case.

> Finally, although the FAA provided two inspectors to assist in the investigation, the agency itself did not participate in the criminal investigation or prosecution.

Gov't's Mem. at 15. These statements are not contested by defendants and hence will be accepted as accurate. Indeed, in Eastern's appeal of this court's order denying its application that a search warrant remain sealed, the Court of Appeals cited Eastern's brief, which stated that,

> From the inception, Valenti [a Criminal Investigator in the office of the United States Attorney for the Eastern District of New York] assumed a leading role in assisting the grand jury's investigation. *No other agency participated in the investigation.*

*United States v. Eastern Airlines, Inc.,* 923 F.2d 241, 243 (2d Cir.1991) (emphasis in original). Therefore, given that the United States Attorney's Office did not conduct a joint investigation with the other agencies whose records defendants seek, this aspect of defendants' motion is controlled by *Guerrerio* and hence defendants' motion must be denied. This, of course, does not leave defendants without recourse to relevant documents which these agencies may have; they are free to subpoena the agencies pursuant to the Federal Rules of Criminal Procedure.

### 2. *Witness List*

■ Defendants also seek a list of the government's trial witnesses. A district court has discretion whether to compel the government to produce such a list, *United States v. Cannone,* 528 F.2d 296, 300 (2d Cir.1975), and the test for determining whether it is appropriate to exercise that discretion is whether "a specific showing of need for disclosure" outweighs "a specific showing of need for concealment by the government." *Id.* at 301. The court in *United States v. Turkish,* 458 F.Supp. 874 (S.D.N.Y. 1978), outlined those factors upon which a defendant can establish need, all of which have been met in this case: (1) the offenses charged in the Superseding Indictment do not involve a crime of violence; (2) defendants have not been arrested or convicted for crimes involving violence; (3) the evidence in the case will largely consist of testimony relating to documents, which by their nature are not easily altered; (4) the government has not established that there is a realistic possibility that supplying the witness' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial; (5) the Superseding Indictment alleges offenses occurring over an extended period of

time (from January 1, 1987 to October 13, 1989 for Count One), making preparation of defendants' defense complex and difficult; and (6) given that all but one of the defendants has court-appointed counsel, defendants have limited funds with which to investigate and prepare their defense. *Id.* at 881. In *Turkish,* the court ordered the government to produce its witness list where, as here, all of the factors were met and the indictment alleged offenses occurring over a fifteen month period.

■ The government, however, argues that even if defendants can establish need, because there has been a history of intimidation of former Eastern employees, there is a probability of witness intimidation which outweighs any need defendants may have for a witness list. The government therefore relies on authorities such as *United States v. Santoro,* 647 F.Supp. 153, 187 (E.D.N.Y. 1986) (defendants' request for the government's witness list is denied because "[t]here is thus nothing to balance against the government's claim that disclosure of the witness list is likely to result in subornation of perjury, obstruction of justice and witness intimidation"), *cert. denied,* 880 F.2d 1319 (2d Cir.1989). However, in this case, the acts of intimidation memorialized by the government in its opposition memorandum, Gov't's Mem. at 23–24, all involved acts of intimidation by Eastern representatives or Eastern attorneys. Because Eastern is no longer a defendant, and is now no longer in existence, there is little or no likelihood that former Eastern representatives would continue any prior acts of intimidation. The government has therefore failed to establish "a specific showing of need for concealment."

■ In sum, because defendants have satisfied the factors outlined in *Turkish,* and thus have established a particularized need for the witness list,[17] and because the government's proffered reasons for why the list

should not be disclosed is no longer applicable in this action, defendants' motion in this respect is granted.

### C. *Exculpatory or Impeachment Materials*

#### 1. *Grand Jury Testimony*

■ The government has disclosed to defendants the identity of certain individuals who testified in the grand jury in a fashion inconsistent with the government's theory of proof. Defendants argue, however, that they are also entitled, pursuant to Rule 16 and *Brady,* to the production of the transcripts of the grand jury testimony of those witnesses. This argument was rejected in *United States v. Grossman,* 843 F.2d 78, 84–85 (2d Cir. 1988), *cert. denied,* 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989), as being "without merit." In *Grossman,* as in this action, the government sent the defendant a letter that a certain grand jury witness might have given the grand jury exculpatory evidence. On appeal of his conviction, the defendant argued that pursuant to *Brady,* the government should have produced the actual grand jury testimony of this witness. The court disagreed, and wrote:

> The government has no duty actually to turn over grand jury testimony where the defendant knows of the witness' identity; that the witness "might have testified before the grand jury"; and that "[the witness'] statements might have supported [the defendant's] defense."

*Id.* at 85 (quoting *United States v. LeRoy,* 687 F.2d 610, 619 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)). In this case as well, the government has provided defendants with the names of the grand jury witnesses who might have given exculpatory testimony, and hence the government has fulfilled its *Brady* obligations.[18]

---

**17.** If defendants were only arguing that the list would help them prepare their defense, this would not establish a particularized showing of need. *United States v. Crozzoli,* 698 F.Supp. 430, 436 (E.D.N.Y.1988) (vague assertions that the disclosure of witnesses will assist in preparation for trial is not a particularized showing of need and defendants' motion is denied). In this case,

however, defendants have established that *all* of the factors in *Turkish* are in evidence here, including making the trial less difficult and complex, and hence disclosure is warranted.

**18.** Defendants argue that the government has not fulfilled its *Brady* obligations because one grand jury witness refused to make himself available to

■ Similarly, Rule 16 does not provide a basis upon which this court can instruct the government to turn over the grand jury testimony of the witnesses identified in the government's letter. This Rule specifically states that the discovery provisions of the Rule "do not relate to discovery or inspection of recorded proceedings of a grand jury." Fed.R.Crim.P. 16(a)(3).[19] Discovery of grand jury testimony is governed by Rule 6 (providing a general rule of secrecy for grand jury proceedings). The Supreme Court has stated that,

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). Defendants have made no such showing here. Finally, Rules 12(i) and 26.2 of the Federal Rules of Criminal Procedure (dealing with the production of witness statements at suppression hearings and at trial), are not applicable here. The grand jury testimony will be available to defendants if that witness testifies under 18 U.S.C. § 3500.

### 2. *Impeachment Materials*

■ The government acknowledges its obligation to produce impeachment material of its witnesses pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Brady*, but contends that it need only produce such material "sufficiently in advance of the witness' testimony so as not to result in any delays at trial." Gov't's Mem. at 19. In this regard, the government relies on a string cite of 10 cases where courts have held that, as a general rule, *Brady* impeachment material need not be produced until the government is required to produce materials pursuant to 18 U.S.C. § 3500. *See, e.g., United States v. Victor Teicher & Co.*, 726 F.Supp. 1424, 1443–43 (S.D.N.Y.1989) (court holds that government need only turn over *Brady* impeachment material at the same time as it turns over its 18 U.S.C. § 3500 material; "[t]his is all the case law requires."). However, as defendants correctly point out, the Certificate of Engagement and Criminal Pre-trial Order, which this court signed on or about September 12, 1990, provides in relevant part that,

> The government shall *within ten days* either permit defendant to inspect and copy, or provide copies of, all such material, and any information obtained as a result of electronic surveillance or any material required to be divulged under the decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The magistrate is authorized to assist in determining whether information is *Brady* material by examining such information *in camera* and advising the government. Failure to comply with this order shall result in preclusion from introducing evidence not disclosed, or their appropriate sanctions.

Appendix to Defs.' Jt. Motion to Compel Discovery, Ex. B, ¶ 2 (emphasis added). Therefore, the fact that courts have determined that the government may produce its *Brady* impeachment materials at the same time as its 18 U.S.C. § 3500 materials is not controlling in this action; rather, the court's order clearly required that all *Brady* material be turned over within ten days of the order. The government has admittedly not complied with this order and hence is direct-

defendants, and some defendants are unreachable because they do not work or reside in the New York metropolitan area. Defs.' Reply Mem. at 10–11. *Brady*, however, does not impose an obligation on the government to make the allegedly exculpatory witnesses who testified at the grand jury available; its only obligation is to provide defendants with the names of those witnesses, which the government has done. *Cf. United States v. Oshatz*, 700 F.Supp. 696, 698 (S.D.N.Y.1988) ("By providing [defendants] the names of the [witnesses who may have exculpa-

tory material] and informing them that these individuals may possess information helpful to the defense, the government has met its *Brady* obligation. It is now up to [defendants] to subpoena these witnesses to take advantage of any exculpatory information they might furnish.").

19. A defendant is entitled, however, to the transcript of his or her own grand jury testimony to the extent that it is related to the offense charged. Fed.R.Crim.P. 16(a)(1)(A).

ed to produce its *Brady* impeachment materials forthwith.

### 3. *Bill of Particulars*

■ Defendants have also moved for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, which provides in part that "[t]he court may direct the filing of a bill of particulars." Fed. R.Crim.P. 7(f). In this action, defendants seek (1) specific acts that defendants have allegedly committed and the specific records that defendants have allegedly falsified; and (2) the deposition testimony that the government alleges was an obstruction of justice. Defendants contend that this information is necessary in order to "enabl[e] [them] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [they] be prosecuted a second time for the same offense." *United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988) (quoting *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987)).

■ The decision to grant or deny a bill of particulars rests in the sound discretion of the court. *United States v. Tramunti,* 513 F.2d 1087, 1113–14 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). As discussed at greater length above, although the Superseding Indictment does detail 33 specific instances of falsification of records, it would be unfair under the circumstances of this case to allow the government to introduce allegedly falsified maintenance records buried in thousands of documents already produced without prior notice to defendants of those documents upon which the government intends to rely. The same rationale applies to defendants' request for a bill of particulars regarding which specific documents have been allegedly falsified; without prior knowledge of these documents, defendants are unduly hampered in the preparation of their defense and there is the risk of unfair surprise.

■ Defendants also seek (i) the identity of the maintenance conference calls which the government intends to prove as overt acts in furtherance of the conspiracy; and (ii) the identity of the "various policies and practices" allegedly instituted in furtherance of the conspiracy, and the means of "intimidation and coercion" attributed to defendants in Paragraph 19 of the Superseding Indictment. As applied to a charge of conspiracy, however, the view virtually universally held is that the defendant is not entitled to particulars regarding the formation of the conspiracy; that exact time and place of overt acts and the names and addresses of persons present; the details concerning how and when the conspiracy was formed or when each participant entered the conspiracy. *See, e.g., United States v. Wilson,* 565 F.Supp. 1416, 1438–39 (S.D.N.Y.1983); *United States v. Feola,* 651 F.Supp. 1068, 1133 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857, *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). This aspect of defendants' motion is therefore denied.

As noted above, the government has provided defendants with the specific wire transmissions which the government intends to rely upon at trial as having been made for the purpose of executing the scheme to defraud charged in Count Two of the Superseding Indictment. This information includes the date of the wire transmission, the aircraft, and the items of maintenance. Defendants' discovery requests, in this regard, Defs.' Mem. at 63, are therefore moot.

Finally, defendants request that the government identify the deposition testimony that it alleges was an obstruction of justice. As in their argument in support of the dismissal of these counts of the Superseding Indictment, defendants premise their argument on the contention that an obstruction of justice charge should be treated as a perjury charge, and hence the government should, in a bill of particulars, identify the specific testimony it claims was an obstruction of justice. *Cf. United States v. Tonnelli,* 577 F.2d 194, 200 (3d Cir.1978) (perjury indictment dismissed because it did not set forth the precise falsehoods alleged and the factual bases of their falsity). This request is now partially moot given the government's statement, in its memorandum in opposition to defendants' motion to dismiss the obstruction of justice counts, that "the government does intend to offer the passages identified by the defendants in their brief, among others, as a basis

754

for the obstruction of justice counts." Gov't's Mem. at 47. Furthermore, as was also noted above, the Superseding Indictment sets out all of the information defendants need to properly prepare their defense, including the substance of defendants' allegedly false testimony: it lists the name of the agency involved; the dates of the hearings; and the manner in which defendants allegedly impeded its function (*i.e.*, testifying falsely regarding knowledge of the conspiracy to falsify maintenance record). Given that the Superseding Indictment sets forth the substance of the allegedly false testimony and given that defendants are in possession of the transcripts of the FAA depositions which form the basis of these counts, a bill of particulars is not required. *Cf. United States v. Rook*, 424 F.2d 403 (7th Cir.):

> It was not necessary that the indictment set out, *in haec verba*, the allegedly false testimony. It set out such testimony "in substance" and the record shows that the defendant's counsel had in his possession a transcript of the *Dillon* trial. We find this sufficient in the instant case.

*Id.* at 405 (upholding the validity of a perjury indictment which failed to set in *in haec verba* the allegedly false testimony), *cert. denied*, 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970).

### CONCLUSION

Based on the foregoing, the court concludes as follows:

1. Defendants' motion to dismiss Superseding Indictment Number 90–629(S) (ILG) is denied.

2. Defendants' motion for an order directing the government to submit, *in camera* and *ex parte*, a written offer of proof demonstrating participation by all defendants in a single conspiracy is denied.

3. Defendants' motion to sever the trial of the Atlanta Defendants and the JFK defendants is granted.

4. Defendants' motion to sever the trial of Upton and Knox is denied.

5. Defendants' motion to dismiss Count Two of the Superseding Indictment is denied.

6. Defendants' motion to dismiss Counts 23–28 of the Superseding Indictment is denied.

7. Defendants' motion compelling disclosure of the government's *Brady* impeachment materials, pursuant to the court's Certificate of Engagement and Criminal Pretrial Order, is granted. The Government is to make these materials available within ten days of receipt of this memorandum and order.

8. Defendants' motion that the government identify which documents it plans to rely upon at trial, and which documents its witnesses will refer to or rely upon, is granted.

9. Defendants' motion that the government produce all *Brady* and Rule 16 materials from the Federal Aviation Administration, the Department of Justice Office of Professional Responsibility, the Department of Transportation and the National Transportation Safety Board, is denied.

10. Defendants' motion that the government produce its witness list is granted.

11. Defendants' motion that the government produce the transcript of testimony by the grand jury witnesses identified by the government is denied.

12. Defendants' motion for a bill of particulars is denied in all respects *except that* the government is ordered to produce a list of all documents upon which it intends to rely at trial.

The JFK defendants and Upton are hereby ordered to appear on July 11, 1994, at 4:30 p.m., to finalize a trial date. The Atlanta defendants shall appear on July 14, 1994, at 4:30 p.m., for the same purpose.

SO ORDERED.